The TULSA COUNTY BOARD OF EQUALIZATION, and its members, Bill B. Pigman and Earl Cherry, in their official capacities only, Appellants,

v.

INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, Oklahoma; Independent School District No. 3 of Tulsa County, Oklahoma; Independent School District No. 5 of Tulsa County, Oklahoma; Independent School District No. 8 of Tulsa County, Oklahoma; Independent School District No. 9 of Tulsa County, Oklahoma; Independent School District No. 11 of Tulsa County, Oklahoma; Appellees.

No. 62644.

Supreme Court of Oklahoma.

Sept. 29, 1987.

David Moss, Dist. Atty., Cary W. Clark, Asst. Dist. Atty., Tulsa, for appellants.

J. Douglas Mann, Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, for appellees.

SUMMERS, Justice.

Six independent Tulsa County school districts filed a petition in the District Court requesting an injunction to prohibit the Tulsa County Board of Equalization and its members from equalizing, correcting or adjusting the value of any real property in Tulsa County, as part of the statutory equalization process, in any manner or fashion other than to conform to the actual fair cash value of said property as defined by law.

On April 17, 1984, following a hearing the trial court entered a temporary injunction. After receiving stipulations, additional evidence and arguments the court entered a permanent injunction on June 7, 1984 which granted the school districts the relief they requested. The Board appealed to this court.

■ The issue on appeal is whether the trial court committed error by enjoining the Board and its members from equalizing property values in Tulsa County on any basis other than in conformity with the fair cash value of the property. We hold that it did not, and affirm.

### FACTS

In early 1984 the Tulsa County Board of Equalization began receiving protests from certain homeowners upset over the size of their tax bills. Homes built after 1979 were on assessment rolls at 100 percent of their sale prices, as compared to pre–1979 homes which were on the assessment rolls at 40 to 50 percent of their fair cash value. On March 16, 1984, in response to the protests, the Board instituted a policy of lowering the assessed values of the protestants' post–1979 residences to approximately the same levels as similar residences with pre–1979 values. The Board took each protest on an individual basis. The protestor presented the Board with valuations of other homes of comparable value to his home and substantiated that with the sale prices, which the Board used as a guide for reducing the valuation of the protestor's property. The Board's actions of lowering post–1979 homes to pre–1979 valuations levels did not conform to the

fair cash values of those properties. The Board actions resulted in equalizing taxes of similarly situated residences without regard to whether or not the properties under protest would be revalued at their fair cash values.

The Board contends that it was trying to inject fairness into the levels of assessment between the post–1979 and the pre–1979 residences. The Board indicated that it was constrained to lower the values of post–1979 homes because of lack of revaluation of pre–1979 homes in the county. The Board stated its actions were taken as a result of the county assessor's failure or refusal to revalue certain property within the county. The Board asserts that the assessor's policy was that homes built prior to 1979 would not be placed on the assessment rolls at their market values until the 1987 assessor year.

The school districts showed that they would suffer substantial financial detriment from the loss of tax revenues if the Board was allowed to adjust values of post–1979 homes to below their fair cash values. Tulsa County had approximately 17,000 to 25,000 residences built after 1978 that would have been eligible under the Board's policy to have their assessed values lowered. Lowering the assessed values of homes within those school districts would lower the amount of revenues available for general and building funds. Millage rates for the general fund and the building fund are fixed, so that when the rates are applied against lower valuations, the revenues go down. If reduction in values occurred, the sinking fund would suffer, because most school districts were already at the maximum debt level and the sinking fund rate could not be increased to make up the loss in revenue.

### I.

The principal duties of county boards of equalization are prescribed by 68 O.S.Supp. 1986 § 2459 and include the following:

"[T]o equalize, correct, and adjust the assessed valuation of real and personal property, by raising or lowering the valu-

ation of the property, real or personal, of any taxpayer, to conform to the fair cash value of said property, as defined by law...."

Art. 10, § 8 of the Oklahoma Constitution states that

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value."

█ Fair cash value of property for ad valorem tax purposes as defined by law is the price the property would bring at a fair voluntary sale between a purchaser willing but not obliged to buy the property would pay an owner willing but not obliged to sell it, taking into consideration its current use. *Bliss Hotel Co. v. Thompson*, 378 P.2d 319, 321 (Okl.1962). Fair cash value is synonymous with fair market value. Id. The Board admitted that this was the definition of fair cash value it had used in equalizing property prior to its decision on March 16, 1984 to equalize the assessed values of post–1979 residences with the values of comparable pre–1979 residences. The Board disregarded fair cash values when lowering the valuations of post–1979 homes.

In *Cantrell v. Sanders*, 610 P.2d 227, 229 (Okl.1980) the Court stated that the authority of the Board was limited:

"Assessment involves two steps: (1) the valuation of property, and (2) the application of an assessment percentage to that value. The result is the 'assessed valuation.' A county board of equalization may 'equalize, correct and adjust the assessed valuation of real and personal property,' but only 'by raising or lowering the *valuation ... to conform to the fair cash value thereof ...*' " (Emphasis by the Court.)

█ The statute setting forth the power, authority and duties of the county boards of equalization is not vague. Oklahoma law requires that county boards of equalization equalize assessed property values to conform to the fair cash values of such properties. The Board's decision to lower valuations of post–1979 homes to levels of comparable pre–1979 homes was clearly in violation of the statutorily prescribed duties of county boards of equalization.

### II.

The Board contends that the decision of the district court should be reversed because enjoining the Board to comply with adjusting valuations to conform to the fair cash value violates the uniformity requirement of Art. 10, § 5 of the Oklahoma Constitution.

Art. 10, § 5 of the Oklahoma Constitution provides that "taxes shall be uniform upon the same class of subjects." This court has held that the uniformity provision

"obviously relates to the rate of taxation, and means that all property of the same class shall be taxed at the same rate of taxation...." *Blake v. Young*, 128 Okl. 153, 261 P. 923, 925 (1927).

See also *Board of County Commissioners of Canadian County v. State Board of Equalization*, 363 P.2d 242, 246 (Okl.1961); *Continental Oil Co. v. State Board of Equalization*, 570 P.2d 315 (Okl.1977).

█ In the instant case it is the assessed valuation that is in dispute and not the rate of taxation. Therefore the uniformity requirement of the Oklahoma Constitution is not violated by the trial court's injunction prohibiting adjustments of assessed valuation except in conformance to fair cash value.

### III.

█ The Board next alleges a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution. The Board argues that where it is impossible to comply with both the Equal Protection Clause of the United States Constitution and the state valuation requirements that property be assessed to conform to the fair cash value, the Equal Protection Clause takes precedence over the state requirements. The Board relies on *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct. 190, 192, 67 L.Ed. 340 (1923) where the United States Supreme Court stated the following principle:

"[W]here it is impossible to secure both the standards of the true value, and the

uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

See also *Appeal of National Bank of Tulsa,* 312 P.2d 495, 498 (Okl.1957). *Sioux City Bridge Co.* held that the individual taxpayer whose property alone is taxed at 100 percent of its true value should be allowed to have his assessment reduced to the percentage at which other properties are taxed, even though this is a departure from the state statute. *Sioux City Bridge Co.* requires systematic and intentional discrimination to establish a violation of the Equal Protection Clause:

"[M]ere errors of judgment do not support a claim of discrimination, but that there must be something more,—something which, in effect, amounts to an intentional violation of the essential principle of practical uniformity." Id.

In further support of the Equal Protection argument appellants cite *Mid-Continent Bldg. Co. v. Bd. of Equalization,* 88 P.2d 626, 627 (Okl.1939) wherein this Court stated:

"This (equal protection) argument would be applicable if appellant had shown before the Board of Equalization that other property of like grade and quality in Tulsa was not assessed at a higher rate than 55 percent of its actual cash value [for an assessment year in which protestant's property was valued at or near one hundred percent (100%) of its fair cash value]."

Also in support of this proposition appellants cite Appeal of *National Bank of Tulsa,* 312 P.2d 495, 497 (Okl.1957)

"An assessment at a higher evaluation than other real estate of like grade and quality within the county would constitute a violation of appellant's constitutional rights."

In *Sioux City Bridge Co.,* supra the Supreme Court of United States said that if systematic and intentional discrimination existed such would constitute a denial of equal protection. The case was remanded to the district court to determine whether such systematic and intentional discrimination existed. *Mid-Continent Bldg. Co.* and *National Bank of Tulsa* are cases which represented the law prior to the enactment of the statutory scheme set forth in 68 O.S.1981 § 2481.1.[1] That is the statute wherein a comprehensive program of revaluation of taxable property and a schedule therefor was set forth. Since the enactment of that statutory scheme this Court addressed the issue that is before us in *Melvin v. Dunn,* 607 P.2d 694, 696 (Okl. 1980) wherein we stated:

"[T]he assessor is required to add the latest valuation of property to the tax rolls without delaying until all property has been revalued. We refuse the equal protection argument offered as proof of the invalidity of such procedure. The current statute, 68 O.S.1971 § 2481.1 provides for and requires evaluation at regular intervals. All property must be valued every five years under the last cited section. If such revaluation proceeds through the several classes of property in the same order as the last, all property will be valued every five years and it does not matter when the process begins, but Section 2481.1 clearly provides that the process must be begun every five years. All property is revalued regularly and that process must have a starting point. If, as appellants urge, all revaluations are ineffective un-

---

1. A. Each county assessor shall commence, immediately if possible, but no later than January 1, 1969, a comprehensive program of revaluation of all taxable property within his respective county. Such program shall progress at a rate which will result in the revaluation of all taxable property within the county before January 1, 1972. Each assessor shall thereafter maintain an active and systematic program of revaluation on a continuous basis, and shall establish a revaluation schedule which will result in revaluation of all taxable property within the

county at least once each five (5) years. A copy of such revaluation schedule showing the time and procedures to be followed in completing the first revaluation of property in his county by January 1, 1972, shall be filed by each assessor with the Oklahoma Tax Commission before October 15, 1968.

Note: This section has been amended effective October 1, 1984. This amendment would not be applicable to this case nor does it alter our holding herein.

til the completion of the five year revaluation, the same result obtains from the taxpayer's standpoint, and that result is revaluation every five years. Only the state's position would be changed by such a procedure and the change would be a tax evaluation that were perpetually five years behind the times. All taxpayers holdings are revaluated every five years; there is no unequal treatment and thus no violation on equal protection."

We held in *Melvin v. Dunn* that revaluing property in different years does not violate the Equal Protection Clause of the Fourteenth Amendment. The taxpayer in *Melvin* claimed he was being denied equal protection because his property was revalued and placed on the tax rolls at the higher value before other properties in the county. We found that there was no unequal treatment, and therefore no violation of equal protection. We stated:

"Every journey must have a starting point." Id. at 697.

Section 2481.1 requires that each assessor shall establish and maintain a revaluation schedule which will result in revaluation of all taxable payroll within each county at least once each five years. With all taxable property being revalued at its fair cash value there is no systematic nor intentional discrimination within the statutory scheme. Therefore, the statutory scheme, if followed, will not result in unequal protection to the taxpayers. This opinion does not address the question of whether or not the County Assessor of Tulsa County has discharged her statutory duties under the statutory scheme, as the Assessor is not a party here nor is the issue before us in this case.

The district court was correct in enjoining the Board from equalizing, correcting or adjusting the assessed valuation of any real property on any other basis than in conformity to the fair cash value of the property. The constitutional, statutory and caselaw authorities clearly require the county boards of equalization to equalize real property values to conform to their fair cash value. The Board's decision to lower valuations below their fair cash values violates the dictates of these authorities.

The Board's constitutional argument is without merit. The uniformity provision of the Oklahoma Constitution has not been violated, because this Court has held that the uniformity provision relates to the rate of taxation and not to the valuation of property. *Blake v. Young.* The Equal Protection Clause of the Fourteenth Amendment has not been violated because, as we said in *Melvin v. Dunn*, revaluing property in different years does not deny the taxpayer equal protection.

The judgment of the trial court is affirmed.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, SIMMS, WILSON and SUMMERS, JJ., concur.

OPALA and KAUGER, JJ., concur in part; dissent in part.