Tony Lee ADAIR, et al., Appellants,

v.

Cheryl CLAY, in her capacity as Assessor, Tulsa County, State of Oklahoma, et al., Appellees.

No. 66296.

Supreme Court of Oklahoma.

July 5, 1988.

Supplement to Opinion June 27, 1989.

As Corrected June 29, 1989.

Rehearings Denied Sept. 20, 1989.

Sneed, Lang, Adams, Hamilton, Downie & Barnett by R. Hayden Downie, Brian S. Gaskill and G. Steven Stidham, Tulsa, for appellants.

Doris L. Fransein, Asst. Dist. Atty., Tulsa, for appellee Board of County Com'rs for Tulsa County.

HODGES, Justice.

This case presents two issues arising out of the valuation placed on certain properties for the assessment of ad valorem taxes by the County Assessor. First, it poses the question whether appellees-public officials responsible for the execution of the ad valorem tax laws in Tulsa County, Oklahoma, complied with state statute. Second, the case raises the question whether there has been any plan or intent to systematically or intentionally discriminate against appellants-taxpayers by appellees. The trial court ruled in favor of appellees and against appellants, finding the practices of assessment under attack were in compliance with statute, and further do not constitute intentional discrimination nor amount to an intentional violation of the essential principle of practical uniformity. We now affirm the trial court's judgment despite our conclusion that the County Assessor failed to follow her statutory mandatory duties.

## FACTS

Appellants brought two actions, which were consolidated for trial, seeking a refund of ad valorem taxes for the tax years 1983 and 1984, pursuant to 68 O.S.1981 § 2461, and alternatively 68 O.S.1981 § 2469. Appellants also sought recovery under 42 U.S.C. § 1983. They requested a refund of taxes equal to the difference between the amounts paid and the amounts that would have been paid if the valuations of appellants' properties had been equalized to the level of the effective assessment ratio of Tulsa County for the tax years 1983 and 1984, and also requested a reasonable attorney's fee and costs.

Appellants consist of two groups. The first group includes taxpayers with properties constructed after 1979, and the second group is comprised of owners of commercial properties whose properties have been revaluated after 1979 as part of the cyclical revaluation program. Appellees include the Commissioners for the County of Tulsa, the County Assessor, the County Board of Equalization and the County Treasurer, who were all named as defendants in their official capacities.

Appellants contend appellees deprived them of their rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution and Section 7 of Article II of the Oklahoma Constitution through inequitable property tax assessments. Appellants allege appellee Cheryl Clay, the current Tulsa County Assessor, has selectively revalued or newly valued appellants' properties at 100% of their fair cash value, while other properties, constructed prior to 1979, are valued at far less than 100% of their fair cash value. Further, they allege Clay does not intend to place any revaluations of pre–1979 homes, the alleged favored class, on the tax rolls until January 1, 1987. Although Clay has applied the same assessment ratio and millage rates against all properties, the failure to revalue all properties has resulted in a higher effective assessment ratio being applied against appellants, than the effective assessment ratio applied against the owners of pre–1979 homes.

Appellants also claim that the assessments violated their rights to uniformity of taxation upon the same class of subjects under Section 5 of Article X of the Oklahoma Constitution, and to equalized ad valorem real property taxes as provided in the Ad Valorem Tax Code, 68 O.S.1981 § 2401 et seq.

The trial was bifurcated and the only issue considered was whether appellants' rights had been violated. In the event that liability is established, the parties stipulated that the fair cash values of appellants' properties were correct, and appellants (who were assessed at a rate of 15% of their fair cash value of their properties) would receive as a refund 35% of the taxes paid under protest for the year 1983, and 40% of the taxes paid under protest for the year 1984.

The case was tried before the district court without a jury. The trial court found in its Findings of Fact and Conclusions of Law as Modified that the Assessor's office, under the previous assessor Wilson Glass,

revalued the bulk of residential properties built prior to 1979 and placed the new values on the tax rolls in the tax years 1977 and 1978. Cheryl Clay was elected Assessor of Tulsa County in 1978 to take office January 1, 1979. The Assessor's office completed revaluation of all properties within Tulsa County between 1977 and 1982. The parties stipulated that Assessor Clay's office has not placed any new values on the tax rolls for residences built prior to 1979. However, these residences were to be revalued and placed on the tax rolls by January 1, 1987, pursuant to a revaluation plan which was submitted to the Oklahoma Tax Commission in 1981 and 1983. Under the plan all properties within the county were to be revalued by 1987 for application to the assessment roll of that year.

The trial court further found Tulsa County has complied with all requirements, standards and directives of the State Board of Equalization in regard to revaluation. It noted that the Assessor has no discretion in that 68 O.S.1981 § 2427(d) (amended 1985) requires him/her to place newly built homes or any improvements thereon according to the value of those improvements on buildings on the tax rolls for the next ensuing year. Also, the trial court observed that under 68 O.S.Supp.1985 § 2481.1(B) all property in the county must be revalued by January 1, 1987. It recognized that the Oklahoma Constitution does not require an assessor to assess property on a certain legislative mandated cycle. And 68 O.S.1981 § 2481.1, as construed by *Melvin v. Dunn*, 607 P.2d 694 (Okla.1980) and *State ex rel. Tulsa Classroom Teacher's Association, Inc. v. Board of Equalization, Tulsa County*, 600 P.2d 861 (Okla. 1979), requires a systematic program of revaluation be done on a continuous basis of all property in the county at least once during each five-year cycle and that an act of revaluation has not been completed until and unless the county assessor has placed the new value on the assessment roll.

The trial court concluded the order in which revaluations in Tulsa County have occurred have not been arbitrary or purposely designed to discriminate against any of appellants or any sub-group to which

they may belong. It also found Assessor Clay has complied with the strict letter of the law but noted "there is grave question whether the full intent of the legislature has been properly followed."

We first consider appellees' alleged noncompliance with state statute and then their alleged violation of appellants' rights under the Oklahoma and United States Constitutions.

## I.

## NONCOMPLIANCE WITH THE OKLAHOMA AD VALOREM TAX CODE

We must initially address the question of whether the Assessor complied with state statute. Title 68 O.S.1981 § 2481.1, as it existed prior to its amendment which was effective October 1, 1984, provided in pertinent part:

"Each county assessor shall commence ... no later than January 1, 1969, a comprehensive program of revaluation of all taxable property within his respective county. Such programs shall progress at a rate which will result in the revaluation of all taxable property within the county before January 1, 1972. Each assessor shall thereafter maintain an active and systematic program of revaluation on a continuous basis and shall establish a revaluation schedule which will result in revaluation of all taxable property within the county at least once each five years."

Under § 2481.1 the first revaluation period was required to be completed before January 1, 1972; the second period before January 1, 1977; the third period before January 1, 1982; and the fourth period before January 1, 1987. The present dispute concerns the fourth five-year revaluation period which began January 1, 1982, and ran through December 31, 1986.

Section 2481.1 was amended, effective October 1, 1984, by the addition of subsections B and C, which read as follows:

"B. All counties shall be in compliance with the provisions of this section

by January 1, 1987. A county shall be deemed in compliance with this section if the county assessor has completed the revaluation of all of the taxable real property in the county by January 1, 1987, and in accordance with the uniform procedures and standards for appraisal of real property adopted by the Oklahoma Tax Commission.

"C. Counties may implement the increases in assessed valuations of revalued real property in the manner provided for in Section 6 of this Act. [68 O.S. Supp.1984 § 2427.2]." (Emphasis added).

We do not construe the above amendment to § 2481.1 as a moratorium on the Assessor's continuing requirement of revaluation until January 1, 1987. While the 1984 amendment to § 2481.1 does not expressly state that the county assessor must continue to revalue property between the enactment of the amendment and January 1, 1987, it is clear from the language of the entire Ad Valorem Tax Code. The amendment provides for a new deadline of January 1, 1987, when revaluation must be "completed." Section 2427.2 provides for graduated increases in assessed valuation of real property revalued as part of the county revaluation program for assessments prior to January 1, 1987, to allow for an orderly compliance with the mandate of §§ 2481.1 through 2481.11. Section 2481.-1(B) simply places upon the county assessor a deadline for the revaluation program continuously performed. Such deadline, however, does not temporarily excuse continuous revaluation. To find otherwise would create disparity, rather than eliminate it. We do not interpret legislation as conflicting where such legislation may be construed as harmonious. *Grand River Dam Auth. v. State,* 645 P.2d 1011, 1019 (Okla.1982).

This Court recently in *Cty. Bd. of Equal. v. School Dist. No. 1,* 743 P.2d 1076, 1079 (Okla.1987), reaffirmed our previous holding in *Melvin v. Dunn,* 607 P.2d 694, 696–697 (Okla.1980), wherein we construed § 2481.1 (now § 2481.1(A)) stating:

"The current statute, 68 O.S.1971 § 2481.1 provides for and requires valuation at *regular intervals.* All property must be valued every five years under the last cited section. If such revaluation proceeds through the several classes of property in the same order as the last, all property will be valued every five years and it does not matter where the process begins, but § 2481.1 clearly provides that the process must be begun again every five years. All property is *revalued regularly* and that process must have a starting point." (Emphasis added).

■ It is not disputed the Assessor followed the mandates of 68 O.S.1981 § 2427(d) for the parties stipulated that appellants' new residential properties were correctly placed on the tax rolls at fair cash value after they were completed pursuant to that section. Nor is the constitutionality of § 2481.1 in issue as that statute was upheld in *Melvin v. Dunn, supra,* against an equal protection challenge. Instead, appellants attack the Assessor's construction of § 2481.1 which was apparently adopted by the trial court. Appellants contend the residences revalued and placed on the tax rolls in 1977 and 1978 should have been revalued no later than January 1, 1982, and January 1, 1983, respectively. Appellees, on the other hand, assert that the older homes were revalued during the third five-year period ending on December 31, 1982; and, thus, need only to be revalued sometime during the fourth five-year period ending on December 31, 1986. Appellees' construction of § 2481.1 is incorrect. As we stated in *Melvin,* 607 P.2d at 697:

"[E]qual treatment is established by regular, cyclical revaluation. The equality of such a system as it operates on the taxpayer is afforded by revaluation every five years, for if one class of property is revalued first in this five year valuation, and revalued last in the next cycle, unequal treatment would be inflicted on the citizenry, as one class would be valued only after ten years had passed."

Assuming revaluation of all property occurred January 1, 1987, the pre–1979

homes were revalued approximately ten years from the time of the previous revaluation. The pre–1979 homes have not been revalued regularly as mandated by the Legislature. Consequently, we find the trial court erred in finding the Assessor has complied with her statutorily prescribed duties.

Appellants urge that they are entitled to a percentage refund under the Ad Valorem Tax Code by reason of Clay's failure to properly revalue the pre–1979 homes. In support of this position, appellants cite *State v. State ex rel. Shull*, 142 Okl. 293, 286 P. 891 (1930), in which this Court held the district court had jurisdiction where the board of county commissioners had failed to correct an erroneous assessment which was merely inequitable, rather than illegal under the Fourteenth Amendment to the Federal Constitution. In *Shull*, the parties stipulated there was no systematical intentional valuation of the property of defendant at a higher valuation than other property. This Court upheld an equalization downward below fair cash value in order to equalize the taxpayer's taxes with other taxpayers whose properties were uniformly assessed at a percentage of their fair cash values. *Shull's* grant of an equalization downward below fair cash value represented the law prior to the present statutory scheme set forth in 68 O.S.1981 § 2481.1 and, therefore, does not control the disposition of the present case. The property in *Shull* was similar real property within the county and should have been similarly assessed; whereas, the newer homes and commercial properties of appellants in this case are not similar to the pre–1979 homes under the statutory scheme of revaluation pursuant to § 2481.1. *Cty Bd. of Equal. v. School Dist. No. 1*, 743 P.2d at 1079.

To grant appellants' request for a refund would in effect allow a "roll-back" of their fair market cash values to pre–1979 estimates contrary to the plain language of Section 8 of Article X of the Oklahoma Constitution and as prescribed by the statutes, as interpreted by recent decisions of this Court. Title 68 O.S.1981 § 2459(a) requires the assessed valuation of real property to conform to the fair cash value of said property. And, 68 O.S.1981 § 2471 requires the assessor to add the latest valuation of property to the tax rolls without delaying until all property has been revalued. *Cty. Bd. of Equal. v. School Dist. No. 1, supra; State ex rel. Tulsa Classroom, Teacher's Association, Inc. v. Board of Equalization, Tulsa County*, 600 P.2d 861, 862 (Okla.1979). As previously mentioned, § 2427(d) requires the assessor to place new residential properties on the tax rolls for the next ensuing year.

Appellants cannot seek to improve their position by attempting to reduce the fair cash value of their properties to the date of the pre–1979 estimates. Because of the fact the pre–1979 homes were not revalued as required by statute, lowering appellants' valuations would only compound Assessor Cheryl Clay's violation of statutory mandates. And, in essence, the dictates of our constitutional, statutory and case law which require new residential property be valued at fair cash value and placed on the tax rolls for the next ensuing year would be virtually of no import. *Cty Bd. of Equal. v. School Dist. No. 1*, 743 P.2d at 1080.

■ Oklahoma statutes provide three methods by which a taxpayer may seek relief from an unjust property tax assessment. Under the administrative remedy provided in 68 O.S.1981 § 2459(a), the county board of equalization has only the authority to equalize, correct and adjust the assessed valuation of real property "by raising or lowering the valuation ... to conform to the fair cash value thereof." *Cantrell v. Sanders*, 610 P.2d 227, 229 (Okla.1980). *See also Cty. Bd. of Equal. v. School Dist. No. 1, supra.* Under 68 O.S. 1981 § 2479, the board of tax roll corrections is authorized to hear and determine complaints with regard to specific enumerated instances. Further, 68 O.S.1981 § 2469 provides for a direct suit for refund "[i]n all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal." (Emphasis added). Here, appellants' properties were legally assessed at fair cash value. Thus, under the facts in

the present case appellants may not seek a percentage refund under any of the statutory remedies.

█ Moreover, this Court may not grant appellants a refund of ad valorem taxes paid on property correctly valued where the Legislature has not provided a statutory remedy. The Oklahoma Constitution vests the whole matter of taxation exclusively within the power of our Legislature as limited by the Constitution. Okla. Const. art. X § 12; *City of Sand Springs v. Dept. of Pub. Wel.*, 608 P.2d 1139, 1148 (Okla.1980). *A fortiori*, the right to a refund can arise only by legislative enactment. *Weil–McLain Co. v. Collins*, 395 Ill. 503, 71 N.E.2d 91 (1947). The courts may only interfere when there is a clear violation of the constitution or statute. The matter of taxation is not within the jurisdiction of the judiciary and only the Legislature can declare when taxes may be refunded absent a constitutional violation. *Board of Com'rs of Oklahoma County v. Ryan*, 107 Okla. 278, 232 P. 834 (1925); *Board of Com'rs v. Hammerly*, 85 Okla. 53, 204 P. 445 (1922). Here, the assessments of appellants' property are legal; thus, no recovery can be had under § 2469. Because the Legislature has not afforded appellants a statutory remedy for a refund this Court is not authorized to grant appellants a judicially created remedy for a refund of taxes properly assessed.

In this particular situation the only judicial remedy a taxpayer has is to seek the remedy of mandamus in district court to compel the Assessor to follow her mandatory statutory duties. *State ex rel. Tulsa Classroom Teacher's Association, Inc. v. Board of Equalization, Tulsa County*, 600 P.2d 861 (Okla.1979). *State of Okla. ex rel. Poulos v. State Bd. of Equal.*, 552 P.2d 1134 (Okla.1975). Appellants here failed to seek mandamus in the instant case; thus, mandamus is not an issue presently before us.

Notwithstanding the trial court's erroneous determination that the Assessor was in compliance with statutory ad valorem taxation procedures, we find the ultimate result reached by the trial court, i.e., denial of refunds, is correct.

## II.

### FEDERAL AND STATE CONSTITUTIONAL CLAIMS

We now turn to appellants' state and federal constitutional claims.

Appellants contend that appellees' unequal application of the Ad Valorem Tax Code, although fair on its face, violated their rights: (1) to the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and (2) to uniformity of taxation upon the same class of subjects as guaranteed by Section 5 of Article X of the Oklahoma Constitution.[1]

#### A. The Equal Protection Clause

The taxpayers did not demonstrate intentional discrimination violative of the Fourteenth Amendment by showing the failure of the Assessor in following 68 O.S.1981 § 2481.1, and as subsequently amended. Section 2481.1 is constitutional. *Melvin v. Dunn*, 607 P.2d 694 (Okla.1980). As the United States Supreme Court explained in *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944):

"[W]here the official action purports to be in conformity to the statutory classification, an erroneous or mistaken performance of the statutory duty, although a violation of the statute is not without more a denial of the equal protection of the laws.

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."

---

1. Appellants also asserted as error a denial of procedural and substantive due process. This allegation of error was not urged in briefs on appeal and is deemed waived. *Hawkins v. McElhanon*, 315 P.2d 667, 668 (Okla.1957).

■ Mistaken performance in administering § 2481.1 does not, by itself, constitute an equal protection violation. A discriminatory purpose or intent is required to demonstrate a violation of the Equal Protection Clause. *Hunter v. Underwood*, 471 U.S. 222, 227–228, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985).

The United States Supreme Court in *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), defined "discriminatory purpose:"

" 'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences. See, *United Jewish Organizations v. Carey*, 430 U.S. 144, 179, 97 S.Ct. 996, 51 L.Ed.2d 229 (concurring opinion). It implies that the decisionmaker, ... selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group."

The testimony at trial revealed that the Assessor desired to lower the assessed valuation of post–1978 homes to less than their fair cash value, but was prohibited from accomplishing this by a judicial order. The Assessor testified that the lower value assessed to pre–1979 homes was unfair to the new businesses and homes assessed after 1978 at fair cash value but testified that no intent to discriminate was present. The record does not contain any testimony indicating that the Assessor failed to revalue pre–1979 homes "at least in part 'because of' ... its adverse effects" on the owners of newer homes and commercial properties. Instead, the record reveals that the Assessor desired to lower the evaluations of the newer properties.

The Assessor determined not to revalue the pre–1979 homes until the law (as she claimed to understand it) required her revaluation. In brief, the Assessor thought she could utilize § 2481.1 to keep taxes low for pre–1979 homes, but was unable to perceive a similar method to evade placing new homes and commercial properties on the tax rolls at less than fair cash value. Thus, that part of the trial court's judgment finding no acts of intentional discrimination is not against the clear weight of the evidence, and the lower court must be affirmed insofar as it found no violation of the Equal Protection Clause.

### B. The Uniformity Clause

■ Appellants also assert the Assessor violated their rights under the Uniformity Clause contained in Article X, Section 5 of the Oklahoma Constitution. We have consistently held that this constitutional provision does not apply to the valuation of property, but rather to the rate of taxation. *Cty. Bd. of Equal. v. School Dist. No. 1, supra; Continental Oil Co. v. State Board of Equalization*, 570 P.2d 315, 319 (Okla.1977) and *Blake v. Young*, 128 Okl. 153, 261 P. 923, 925 (1927), control our resolution of this proposition. Ad valorem tax assessment entails two steps: (1) the valuation of property, and (2) the application of an assessment percentage to that value. *Cantrell v. Sanders*, 610 P.2d 227, 229 (Okla.1980). The present action has nothing to do with the determination of the rate of taxation or selection of assessment ratios. Thus, this argument is not well founded and may be disposed of summarily.

### III.

### CLAIMS UNDER 42 U.S.C. § 1983

Appellants also assert they are entitled to relief pursuant to the remedy provided by 42 U.S.C. § 1983, claiming the deprivation of federal constitutional rights. Section 1983 provides in part as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights, privileges, or immunities secured by the Constitution and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added).

Appellants allege appellees acted under color of state law to deprive them of their rights to equal protection. Appellants argue that this gives them a cause of action in state court under § 1983, independent of their state law remedies.

Because we hold that appellants have failed to prove intentional or purposeful discrimination, a crucial element to their § 1983 action, we need not decide whether § 1983 presents an alternative remedy for asserting appellants' federal constitutional claims.

## CONCLUSION

Because no statutory remedy for a tax refund exists in this case, this Court may not create a judicial legal remedy for a tax refund as the matter of taxation is exclusively within the power of the Legislature. We affirm the trial court's determination that the appellants have not been denied equal protection under the United States Constitution, and also affirm that court's judgment that the Uniformity Clause, Article X, Section 5 of the Oklahoma Constitution was not violated. Therefore, the trial court's denial of refunds is accordingly affirmed.

JUDGMENT OF THE TRIAL COURT AFFIRMED.

HARGRAVE, V.C.J., and HODGES, LAVENDER, SIMMS, OPALA and ALMA WILSON, JJ., concur.

DOOLIN, C.J., SUMMERS, J., and MEANS, Special Justice, sitting in place of KAUGER, J., who recused, concur in part, dissent in part.

SUMMERS, Justice, concurring in part and dissenting in part.

I concur in the Court's treatment of the taxpayers' Federal and State Constitutional claims. And although I concur in the Court's holding that the Assessor failed to comply with her statutorily mandated duties, I must respectfully dissent from that part of the opinion denying the aggrieved taxpayers their refunds.

In *Melvin v. Dunn*, 607 P.2d 694 (Okl. 1980), we stated the following:

"In the previous discussion of appellants' equal protection argument, it was pointed out that equal treatment is established by regular, cyclical revaluation. The equality of such a system as it operates on the taxpayer is afforded by revaluation every five years, *for if one class of property is revalued first in this five year valuation, and revalued last in the next cycle, unequal treatment would be inflicted on the citizenry, as one class would be valued only after ten years had passed.* Id. 607 P.2d at 697 (Emphasis added)."

The majority finds the assessment of taxes to be correct as to the protesting taxpayers because the taxpayers' new properties were placed on the tax rolls at fair cash value. However, the tax as to them was *illegal* since it was not in conformity with 68 O.S.1981 § 2481.1, and denied the taxpayers their statutorily created right to equal treatment.

Taxpayers are provided a remedy where the state imposes an illegal tax.

68 O.S. § 2469 states:

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. It shall be the duty of such collecting officer to hold such taxes separate and apart from all other taxes collected by him, for a period of thirty days, and if within such time summons shall be served upon such officer in a suit for recovery of such taxes, the officer shall further hold such taxes until the final determination of such suit. All such suits shall be brought in the Court having jurisdiction thereof, and they shall have precedence therein. If, upon final determination of any such suit, the Court shall determine that the taxes were illegally collected, as not being due and

owing, the Court shall render judgment showing the correct and legal amount of taxes due by such person, and shall issue such order in accordance with the Court's findings, and if such order shows that the taxes so paid are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess and shall take his receipt therefor."

Most of the appealing taxpayers have paid their taxes under protest in full compliance with this section. The parties have stipulated to the amounts of refund recoverable by each in the event liability was established.

In *Bonaparte v. American Vinegar Mfg. Co.*, 161 Okl. 54, 17 P.2d 441 (1932) we quoted with approval the following:

"In other words, the general scope of the jurisdiction and powers of the taxing authorities is to impose taxation upon property assessed at its true cash value, and at a rate not exceeding the maximum fixed by law; and when the authorities have proceeded and acted within the scope of their authority as thus defined, and property has not been valued for taxation beyond its true cash value, or a greater rate of taxation levied upon such value than that authorized by law, the owner has not been injured, and cannot be heard to complain, *provided his property has been taxed equally and uniformly with other property in the taxing district.*" *Id.* 17 P.2d at 444, (quoting *Wallace v. Bullen,* 6 Okl. 17, 52 P. 954, 958 (1896)). (Emphasis added).

The property of the protesting taxpayers herein was not taxed equally as required by 68 O.S.1981 § 2481.1 and *Melvin v. Dunn,* supra. The protesting taxpayers were burdened with a disproportionate share of maintaining governmental institutions.

The Oklahoma Constitution provides that a remedy shall be provided for every legally cognizable injury. Okla. Const. Art. II, § 6. The taxpayers could not receive relief from this inequitable treatment by appearing before the Tulsa County Board of Equalization and requesting lower assessed values as to their property. *Tulsa County*

*Board of Equalization v. School District No. 1 of Tulsa County,* 743 P.2d 1076 (Okl.1987).

A proceeding pursuant to a prior version of 68 O.S.1981 § 2469 was described as equitable in nature in *Bonaparte v. American Vinegar Mfg. Co.,* 161 Okl. 54, 17 P.2d 441 (1932). I would hold that the equitable remedy afforded by § 2469 allows this suit to recover tax refunds for the inequitable treatment received by these taxpayers who have complied with the requirements of that section.

I am authorized to state that DOOLIN, C.J., and MEANS, Special Justice, share the views expressed herein.

### SUPPLEMENT TO OPINION

HODGES, Judge.

Appellants' Petition for Rehearing has called our attention to the United States Supreme Court's recent decision in *Allegheny Pittsburgh Coal Co. v. County Commission,* —— U.S. ——, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), which was handed down subsequent to the opinion in this matter. Because the constitutional violations remedied in *Allegheny* are not present in the instant facts, this appeal is not affected by that case.

In *Allegheny,* the assessor for Webster County, West Virginia, apparently on her own initiative, taxed petitioners on the full value of their property but undervalued neighboring comparable property. Petitioners' property was assessed based upon the recent purchase price while only minor modifications were made in the assessments of land that had not been recently sold. As a result, petitioners were taxed at eight to thirty-five times the rate applied to comparable properties. The assessor's adjustment policy would have required more than 500 years to equalize the assessments. *Id.* 109 S.Ct. at 637.

The *Allegheny* court explained that "the constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners." *Id.* 109 S.Ct. at 638. It was noted that *Allegheny* was "not an example of transitional delay in adjustment of assessment value" but rather the assessor

had intentionally and systematically under-valued property of owners within the same class as petitioners in violation of the equal protection clause. *Id.* The Court conclud-ed that the equal protection violation could not be remedied by forcing petitioners to seek an upward revision of the taxes of other members of their class.

Unlike *Allegheny*, the present appeal does not involve intentional and systematic undervaluation of property in violation of the equal protection clause. The assessor applied the same assessment ratio to all properties. Because no equal protection violation has occurred, the *Allegheny* deci-sion does not affect this appeal.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, SIMMS, DOOLIN and WILSON, JJ., concur.

MEANS, Special Justice, sitting in place of KAUGER, J., concurs in Supplement to Opinion only.

KAUGER, J., recused.

SUMMERS, J., dissents.