R.R. TWAY, INC., Appellant,

v.

OKLAHOMA TAX COMMISSION, Appellee.

No. 82725.

Supreme Court of Oklahoma.

Nov. 21, 1995.

Rehearing Denied Feb. 6, 1996.

John B. Hayes, Looney, Nichols, Johnson & Hayes, Oklahoma City, for Appellant.

David Hudson, General Counsel and Marjorie L. Welch, Deputy General Counsel, Oklahoma Tax Commission, Oklahoma City, for Appellee.

Lou Keel, Assistant District Attorney, Oklahoma City, for Oklahoma County.

SUMMERS, Justice:

This is an appeal from an action in the Oklahoma Tax Commission by a construction contractor seeking a refund of both state and

county sales tax. The Tax Commission granted the requested refund for the state sales tax, but declined to refund any Oklahoma County sales tax, and also refused to allow Oklahoma County to be joined as a party in the refund proceeding. We affirm the Tax Commission's order.

R.R. Tway, Inc. is the contractor. It paid sales tax on materials used to fulfill construction contracts with the Oklahoma Department of Transportation. In August of 1992 Tway sought a refund in the amounts of $19,154.57 for State sales taxes and $5,913.96 for Oklahoma County sales taxes. The application requested refunds for state sales taxes paid between July 21, 1986 and July 20, 1988, and a refund of Oklahoma County sales taxes paid between November 1, 1987 and July 20, 1988.

The statute under which the refunds were sought is 68 O.S.Supp.1992 § 1354(1)(T).[1] This section allows a contractor to apply for a refund of sales taxes when specified circumstances occur. The refund is based upon the difference between the sales tax rate at the time the contract was entered into and the higher rate paid when the materials were purchased to fulfill the contract.

In Order 93–11–04–24 the Tax Commission determined "that the sales tax claims for refund of Protestant, R.R. Tway, Inc. be sustained." The Commission also determined that it had no jurisdiction to require Oklahoma County to be named as a party. The result of the Commission Order is that Tway is refunded state sales tax but not the county sales tax. Tway appealed, arguing that the Commission should have exercised jurisdiction over Oklahoma County and determined the County's liability to Tway for a sales tax refund.

When the application for refund was filed in August of 1992 the Oklahoma County sales taxes collected in 1987 and 1988 by the Commission had already been remitted to Oklahoma County. Those funds were thus no longer in the custody of the Tax Commission. Additionally, at the time of the refund proceeding the Commission was not collecting *any* Oklahoma County sales taxes. Thus, there were no Oklahoma County sales taxes in the custody of the Commission available to satisfy Tway's claim for an Oklahoma County sales tax refund.

The statute granting the right to a refund also states that: "... the Oklahoma Tax Commission shall prescribe rules and regulations and shall provide procedures for the refund to a contractor of sales taxes collected on purchases eligible for the lower sales tax rate authorized by this subsection;...." The Commission issued Rule 710:65–13–70 to provide a procedure for refunds. This rule states that the contractor may seek refunds on an annual basis for purchases made the

---

1. Section 1354 was amended by Laws, 1992 c. 175, § 1 (effective May 6, 1992) and Laws 1992, c. 383 § 1 (effective June 9, 1992). Section 1354 was also amended by Laws 1994, c. 278 § 13 (effective September 1, 1994). We note that § 1354(1)(T) was changed by the 1994 amendment. The parties assume the applicability of the 1992 version of the statute, and we do likewise, since the parties do not address the applicability of the 1994 amendment. The 1992 version of § 1354(1)(T) stated:

Any taxable services and tangible personal property including materials, supplies, and equipment sold to contractors for the purpose of developing and improving real estate even though said real estate is intended for resale as real property, hereby declared to be sales to consumers or users, however, taxable materials, supplies and equipment sold to contractors as provided by this subsection which are purchased as a result of and subsequent to the date of a contract entered into either prior to the effective date of any law increasing the rate of sales tax imposed by this article, or entered into prior to the effective date of an ordinance or other measure increasing the sales tax levy of a political subdivision shall be subject to the rate of sales tax applicable, as of the date such contract was entered into, to sales of such materials, supplies and equipment if such purchases are required in order to complete the contract. Such rate shall be applicable to purchases made pursuant to the contract or any change order under the contract until the contract or any change order has been completed, accepted and the contractor has been discharged from any further obligation under the contract or change order or until two (2) years from the date on which the contract was entered into whichever occurs first. The increased sales tax rate shall be applicable to all such purchases at the time of sale; however, the Oklahoma Tax Commission shall prescribe rules and regulations and shall provide procedures for the refund to a contractor of sales taxes collected on purchases eligible for the lower sales tax rate authorized by this subsection.

preceding year, or may seek a refund upon completion of the contract. By Tax Commission interpretation a refund may also be requested at any time prior to contract completion.

The Tax Commission collects and enforces county sales taxes pursuant to a contract with a county as authorized by statute. 68 O.S.1991 § 1371. In its agreements with Oklahoma County the Tax Commission provided a procedure for refunds to taxpayers of taxes collected for the benefit of the county. The agreements were in force between November 1, 1987 and June 30, 1989, and included provisions stating that:

> The County agrees that refunds of county sales tax previously paid over to the Treasurer of the County shall be paid from subsequent collections of the county sales tax. The Commission's determination of claims for refund shall be binding on the County.

> In the event of termination of this agreement, the Commission will cause to be paid over to the County all county sales tax funds in its possession then due and payable under this Agreement, and the County shall thereafter be liable for and shall pay any refunds of county sales tax, penalty and interest paid under protest that must be refunded and any interest required thereon. After such termination, the Commission's liability shall extend only to the amount of such funds being held by it. The County agrees to pay any interest required by law to be paid on such refunds.

These provisions show that county refunds are to be paid from the Commission's collection of sales tax for the county at the time of the refund. This procedure is inadequate for Tway because the Commission was not collecting sales tax for Oklahoma County at the time Tway filed its application for a refund. The Commission relies upon Okla. Const. Art. 10 § 20,[2] and argues that State funds in its custody cannot be used to satisfy the liability of Oklahoma County, and that the

county sales tax refund must come from Oklahoma County.

## I.

■ Tway argues that a taxpayer seeking a refund from a county is authorized to bring the county in as a party to the refund proceeding before the Commission. Tway cites to the Commission's statutory obligation to provide a refund procedure and the Court's opinion in *Kay Electric Cooperative v. State ex rel. Oklahoma Tax Commission,* 815 P.2d 175 (Okla.1991). In *Kay* the Court stated that "This Court's opinion in the present case is only binding as the law of the case on the entities which are parties to the actions." *Id.* 815 P.2d at 178. The refund of city sales taxes was not reached in *Kay* because the cities were not parties to the refund proceeding, and Tway argues that this must mean that cities (and counties) may be made parties to refund proceedings. Tway also relies upon the separate opinion in *Kay* for the proposition that joining Oklahoma County would be the proper procedure. *Id.* 815 P.2d at 178–181 (Summers, J., concurring in part and dissenting in part, and joined by Wilson and Kauger, JJ.).

In *Kay Electric Cooperative* this Court noted the problem of administering, within the statutory procedure of a Tax Commission protest proceeding, a sales tax refund when it was from the sales taxes of counties and municipalities, and when the counties and municipalities were not parties thereto. *Id.* 815 P.2d at 178. That opinion was published in July of 1991. In the intervening four years since *Kay* no express statutory authorization for joining counties and municipalities in either refund or protest proceedings before the Commission has been enacted by the Legislature.

The Court's language in *Kay* does not state that counties and cities may be made parties for a refund proceeding. For example, the language does not rule out the possibility that liability of a county or municipality for sales tax refunds could be addressed in a

---

2. Okla. Const. Art. 10 § 20:

The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes.

proceeding other than one before the Commission. Indeed, Oklahoma County's brief in this case argues that the proper remedy was suit in the District Court. Further, in *Kay* the tax was paid under protest, and that is not the case before us.

Tway argues that the Commission was required to "provide procedures for the refund to a contractor of sales taxes collected on purchases eligible for the lower sales tax rate authorized by this subsection [§ 1354(1)(T)]...." Does this language authorize the Commission to compel Oklahoma County to appear as a party to the proceeding on the refund application?

■ The Tax Commission is of the opinion that § 1354 does not give it the authority to compel an appearance of Oklahoma County or issue orders requiring Oklahoma County to make payments on tax refunds.[3] We believe the Commission's stance is reasonable.

■ First, in the intervening four years since *Kay* the Legislature has enacted no statute for joining counties and municipalities in either protest or refund proceedings before the Commission. Failure to amend a statute after judicial construction of that statute is legislative acquiescence to that construction. *McDonald v. Time–DC, Inc.*, 773 P.2d 1252, 1257 n. 20 (Okla.1989). In *Kay* the court judicially construed a Tax Commission protest procedure to the extent that the Court's holding therein requiring a refund was not applied to the counties and municipalities, they being non-parties. *Kay Electric Cooperative*, 815 P.2d at 178. The Legislature has been active in amending certain tax statutes. For example, both 68 O.S. § 1354(1)(T) creating the exemption at issue, and 68 O.S. § 225 providing for payment of refunds in appeals, were amended in 1994, and neither provided for including counties or municipalities as parties for the purpose of

funding local tax refunds. Thus, post-*Kay* Legislatures have appeared to have concluded that counties and municipalities should not be included as parties.

■ Tway argues that the Commission should have set aside Oklahoma County sales tax funds for anticipated refund claims such as Tway's. But Tway does not offer any argument on how the Commission could anticipate the amount of potential refund claims occurring years after the sales tax was paid. One problem in Tway's argument is the statutory scheme for collecting and remitting county and municipal sales tax revenue collected by the Tax Commission.

In *City of Oklahoma City v. Oklahoma Tax Commission*, 789 P.2d 1287 (Okla.1990) we explained the legislatively-required accounts for deposit of sales tax revenue collected by the Commission for a municipality. We noted that sales tax revenue was deposited into a revolving fund, and that on the tenth of each month the Commission remitted to a municipality those municipal sales taxes collected the previous month. *Id.* 789 P.2d at 1289–1290. We noted that new law was enacted in 1989, and sales taxes collected for municipalities and counties were deposited into a sales tax remitting account. *Id.* 789 P.2d at 1293. 68 O.S.1991 § 1373. We explained that a remittance of the sales tax revenue collected in one month was made to the counties and municipalities on the fifteenth of the succeeding month. *Id.* 789 P.2d at 1293 n. 19. See 68 O.S.1991 § 1374.

The statutory scheme requires remitting the sales tax revenue collected, as well as a proportionate share of interest, but has no express provision for the Commission to hold back certain amounts for potential refund actions. But in other situations the Legislature has expressly granted to the Commission the power to hold back certain municipal

---

**3.** This fact would usually be noteworthy because this Court gives great weight to the continual construction of a statute charged by an agency with its enforcement, and where the Legislature has not expressed its disapproval with an agency's construction of a statute, the Legislature's silence may be regarded as acquiescence in the agency's construction. *United Airlines, Inc. v. State Board of Equalization*, 789 P.2d 1305, 1311–1312 (Okla.1990). However, there is no

evidence in the record showing a continual construction by the Commission in excluding counties and municipalities from the proceedings. Neither is there any Commission Rule stating that the Commission would not require the participation of counties and municipalities in refund proceedings. Thus, the Commission has pointed to nothing that would have given notice to the Legislature of the Commission's interpretation § 1354(1)(T).

and county sales tax funds for refunds. See 68 O.S.1991 §§ 1357.1 (computers, etc.), 1357.3 (tourism facilities), 1357.4 (computers, etc.), 1357.5 (aircraft maintenance facilities), 1359.1 (manufacturing facility). These sections state that they are for the purpose of administering certain statutory sales tax exemptions. The statutes authorize accounts for the Commission to hold funds from the sales taxes collected each month. They also state that the Commission shall estimate the amounts needed to transfer to these accounts. Unlike these sections, the Legislature did not provide express authority to the Commission for holding back certain sales tax funds for the refund granted by § 1354(1)(T).

■ The maxim "expressio unius est exclusio alterius," that the mention of one thing in a statute impliedly excludes another thing, is used to determine legislative intent. *PSO v. State ex rel. Corporation Commission,* 842 P.2d 750, 753 (Okla.1992); *State ex rel. Macy v. Freeman,* 814 P.2d 147, 152 n. 14 (Okla. 1991). Here we have the Legislature expressly providing the Commission with the authority to hold back certain sales taxes to fund exemptions, but declining to give it that authority with the § 1354(1)(T) refund, and requiring all local sales tax revenue, including that from § 1354, to be remitted each month to the local entity. These statutes weigh against any argument that the Commission was required to retain local § 1354 sales taxes for future refunds.

In sum, the language of the statutes show the following: 1. The Legislature has not expressly given to taxpayers the remedy of compelling the appearance of counties and municipalities in refund and protest proceedings before the Commission where a taxpayer seeks a refund from local taxes; 2. The Legislature has expressly given to the Commission the authority to withhold certain local sales taxes for refunds; 3. The Legislature has not expressly given to the Commission the authority to withhold § 1354(1)(T) local sales taxes, and those taxes must be remitted to the local entities on a monthly basis. We conclude that the Tax Commission's construction of the statutes is reasonable, i.e., that it may not compel

Oklahoma County to appear before the Commission in the absence of express statutory authority granted to the Commission to issue such an order.

## II.

■ Tway asks us to judicially create a remedy for taxpayers in proceedings before the Commission adjudicating a refund. It argues that there must be a procedure whereby Tway may obtain a § 1354(1)(T) refund of county taxes. Tway's request presents several difficulties.

Did the Tax Commission provide a procedure for a refund as required by statute? If the provisions of the county agreements and Commission Rule 710:65–13–70 are construed together they show that the Commission and the County contemplated requests for refunds to be filed while the county tax was being collected. The Rule and agreements provide a remedy for a refund.

The Oklahoma County tax existed from November 1, 1987 to November 1988. Tway sought a refund for taxes paid between July 21, 1986 and July 20, 1988. Tway did not request a refund from the Commission between July 20, 1988 and November 1988 when the Commission was still collecting Oklahoma County sales taxes, and thus, had custody of funds for payment of potential county refunds.

By Commission Rule 710:76–13–70 applications for refunds may be filed on an annual basis for taxes paid on purchases made the preceding year or upon completion of the contract. Tway's application for a refund was not filed on an annual basis for preceding year purchases. At the time Tway filed its refund its contracts had not been finalized or "closed out" and thus, neither was the application filed upon completion of the contract. Thus, the timeliness of Tway's application does not meet the express language of Rule 710:76–13–70 for when an application for refund may be filed.

At issue before the Commission was the timeliness of Tway's application. In this controversy the Commission has interpreted the applicable versions of § 1354 and Rule 710:76–13–70 to mean that Tway could timely

file a refund application *at any time prior to completion of the contract.* Thus, Tway could have filed for and received a refund of county sales taxes from the Tax Commission between August 1988 and November 1988 when the Commission was in possession of Oklahoma County sales tax revenue. Tway had a statutory remedy for a refund.

This means that Tway is not merely asking this Court to judicially create a tax-refund remedy. Tway is asking the Court to create a judicial tax-refund remedy in addition to a statutory remedy that was available to give Tway relief. Such a request presents difficulties.

██ The right to apply for this refund of taxes and the remedy provided is based solely upon statutory authority. Generally, when a statute creates both a right and a remedy for its enforcement the statutory remedy is exclusive. *Tate v. Browning–Ferris, Inc.,* 833 P.2d 1218, 1226 n. 36 (Okla. 1992). In tax jurisprudence circumstances may exist so as to authorize a judicially created remedy when an illegal tax is collected. For example, we have long recognized that when prompt payment of an illegal tax is required to protest that tax and a refund is due, a procedure for the refund must be provided. *See Exchange Oil Co. v. State,* 80 Okla. 52, 193 P. 999, 1001–1002 (1920); *Continental Oil Co. v. Oklahoma Tax Commission,* 494 P.2d 650, 653 (Okla.1972). But even when the tax is illegal we have recognized that a judicial remedy need not be created when the taxpayer had a statutory remedy available to obtain a refund of the protested tax but declined to use it. *Stallings v. Oklahoma Tax Commission,* 880 P.2d 912, 917–918 (Okla.1994). This is consistent with our rule that a court of equity will not be used to provide a remedy in tax refund matters when a statutory remedy was available to the taxpayer. *Whig Syndicate, Inc. v. Keyes,* 836 P.2d 1283, 1288 (Okla.1992).

██ Here the tax is legal when collected, and the refund is optional, with refunds going only to those who apply therefor. In effect, the refund is similar to a tax deduction or exemption reducing tax liability for those taxpayers who decide to use it. Tax exemptions and deductions are matters of legislative grace subject to the controlling authority of either the Constitution or the Oklahoma Constitution.[4] Because the exemption is granted by, and within the power of, the Legislature, a court will not construe a tax exemption so as to enlarge its scope. *Bert Smith Road Machinery Company, Inc. v. Oklahoma Tax Commission,* 563 P.2d 641, 643 (Okla.1977). This rule parallels that for tax remedies in that the Court has stated that it will not create a tax remedy when the Legislature has declined to do so. For example, in *Adair v. Clay,* 780 P.2d 650 (Okla. 1988), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1032 (1990), we said that: (1) the Oklahoma Constitution vests taxation exclusively in the power of the Legislature, (2) the right to a refund can arise only by legislative enactment, (3) only the Legislature can declare when taxes may be refunded absent a constitutional violation, and (4) that the Court was not authorized to step into the shoes of the Legislature and provide a remedy. *Id.* 780 P.2d at 655.

██ Similar reasoning also applies to Tway's argument that the Tax Commission's remedy is imperfect, and should thus be augmented by the Court. The remedy before the Tax Commission is derived from application of a Commission Rule and the Commission agreements that are designed to give a remedy to obtain refunds in certain circumstances. Both the Rule and agreements ultimately receive their validity by statutory authority. Rules and regulations are treated as law. *Trust Co. of Oklahoma v. State ex rel. DHS,* 890 P.2d 1342, 1346–1347 (Okla. 1995). The agreements are based upon 68

---

**4.** *See Association for Equitable Taxation v. Oklahoma City,* 901 P.2d 800, 804, 805 (Okla.1995), (the Legislature creates exemptions for state sales taxes, and is given "broad latitude" in creating classifications in tax statutes); *Matter of Income Tax Protest of Flint Resources,* 780 P.2d 665, 673 (Okla.1989), (deductions are a matter of legislative grace rather than judicial interven-

tion); *Koch Fuels, Inc. v. State ex rel. Oklahoma Tax Commission,* 862 P.2d 471, 480, 481 (Okla. 1993), (sales tax exemption unconstitutional); *Oklahoma Broadcasters v. Oklahoma Tax Commission,* 789 P.2d 1312 (Okla.1990), (same); *Dow Jones & Company v. State ex rel. Oklahoma Tax Commission,* 787 P.2d 843 (Okla.1990), (same).

O.S.Supp.1983 § 1371 (as amended). The statutory authority for the agreements states that they "shall provide" for the assessment, collection, and enforcement of the county sales tax.

Tway's argument for this Court to enlarge upon the Commission's remedy rests upon the premise that a taxpayer should be allowed to ignore the provisions of such agreements. We decline to adopt such a view where no showing is made that the agreements violate either statute or the Oklahoma Constitution. The Tax Commission argued that the limitation in the agreements requiring Commission possession of county sales tax funds was to structure the remedy consistent with the Oklahoma Constitution. Tway has not refuted this argument. We thus decline to adopt Tway's argument that the Agreements violate § 1354.

From the record and argument before us it is clear that Tway had a refund procedure provided by the Tax Commission to obtain a county tax refund by requesting refund(s) during the time the tax was in effect. Thus, what Tway is arguing for is a right of a taxpayer to disregard an available and effective refund procedure provided by the Commission, waiting a few years, and then seeking a refund.

■ The Tax Commission may require a taxpayer to file a request for a refund within a specified amount of time. *Stallings v. Oklahoma Tax Commission*, 880 P.2d 912, 917 (Okla.1994). The 1992 version of § 1354(1)(T) does not state that a taxpayer/contractor may wait until the end of a multi-year contract and then seek a refund.[5] It states that the contractor may receive a

refund as provided by the procedures of the Commission. Such a procedure was available to give Tway relief but it was not sought.

### III.

Oklahoma County makes a statutory argument relying upon 62 O.S.1991 § 365.1. This statute states:

> It is hereby provided that courts of record shall have exclusive jurisdiction in all actions for money judgment or for establishing any indebtedness against any county, city, town, board of education, school district or other municipal subdivisions of the State of Oklahoma.

Oklahoma County argues that it cannot be made a party to a Tax Commission refund or protest proceeding because the Legislature has expressly stated that courts of record have exclusive jurisdiction for establishing indebtedness against a county. The Commission also relied upon § 365.1 in concluding that it did not possess jurisdiction to order Oklahoma County to be joined as a party. This argument assumes that the establishment of tax refund liability in a Commission proceeding is a "debt" or "indebtedness" within the meaning of 62 O.S.1991 § 365.1. Neither the County or the Commission briefed this underlying assumption, and in view of our disposition of this appeal we need not determine whether § 365.1 would apply.

Oklahoma County also argues that Tway had an additional remedy by suit in the District Court. Generally, an action in District Court for a tax refund is for money had and received.[6] The County argues that a

---

5. The 1994 version of § 1354 states that a contractor may seek a refund "before the expiration of three (3) years after the date of contract completion or five (5) years after the contract was entered into, whichever occurs earlier; ...."

6. An action for a tax refund is an action for money had and received. *Estate of Kasishke v. Oklahoma Tax Commission*, 541 P.2d 848, 852 (Okla.1975). The assumpsit action for money had and received is in quasi-contract. *Winey v. Dailey*, 161 Vt. 129, 636 A.2d 744, 751 (1993); *Williams v. Khalaf*, 802 S.W.2d 651, 656 (Tex. 1990); *Boldt v. State*, 101 Wis.2d 566, 305 N.W.2d 133, 138 (1981); *Town of Westport v.*

*Bossert Corp.*, 165 Conn. 410, 335 A.2d 297, 299 (1973); *United States Fidelity and Guaranty Ins. Co. v. Hartsook*, 487 S.W.2d 649, 651 (Tenn. 1972); *Witmer v. Estate of Brosius*, 184 Kan. 273, 336 P.2d 455, 458–459 (1959); Ames, *The History of Assumpsit*, 2 Harv.L.Rev. 1, 63–64 (1888). However, a tax refund action is not characterized with strict uniformity as a contractual remedy. *See Board of County Commissioners of Creek County v. St. Louis–San Francisco Ry. Co.*, 170 Okla. 485, 40 P.2d 1112, 1113–1114 (1935), (where in an action for a refund authorized by O.S.1931 § 12749 and seeking the recovery of money spent for the purchase of illegal tax sale

two-year statute of limitations is applicable to a claim against a county for a tax refund, and relies upon 19 O.S.1981 § 247 and *State ex rel. Board of Tax Roll Corrections of Tulsa County v. Mack Truck Sales,* 620 P.2d 388 (1980). Adjudicating whether Tway had a remedy in the District Court in these circumstances is not necessary to resolve this appeal, and we decline to comment further on the subject.

Our case today is not a protest proceeding where the proceeding arises from the payment of taxes under protest. The sales tax funds were paid to the Commission, and remitted to Oklahoma County. A refund proceeding was filed a few years later. Tway argues in its brief that "the taxing political entity actually collects funds which it *knows* from the outset must be refunded later when the contractor/taxpayer files a claim with the OTC and produces the supporting data." However, nothing in our appellate record here suggests that the Commission knew prior to the filing of Tway's claim for refund that any amount of refund was potentially required for Tway. Indeed, Tway would not have received any refund unless and until the application for a refund was filed.

For the reasons stated, Oklahoma Tax Commission Order No. 93–11–04–024 is affirmed.

ALMA WILSON, C.J., and HODGES, LAVENDER, HARGRAVE and WATT, JJ., concur.

KAUGER, V.C.J., and SIMMS and OPALA, JJ., dissent.

certificates the remedy was not contractual in nature for the purpose of certain statutes).