COUNTY BOARD OF EQUALIZATION OF KAY COUNTY, Oklahoma, Plaintiff in Error,

v.

FRONTIER GRAIN COMPANY, an Oklahoma Corporation. (In the Matter of the Assessment for the Year 1965 of Ad Valorem Taxes), Defendant in Error.

No. 42547.

Supreme Court of Oklahoma.

May 6, 1969.

Albert D. Lynn, E. J. Armstrong, R. O. Ingle, Oklahoma City, for Oklahoma Tax Commission.

Ralph C. Haynes, Dist. Atty. for Kay County, Oklahoma, Newkirk, for plaintiff in error.

Charles A. Johnson, Ponca City, for defendant in error.

DAVISON, Justice.

This is an appeal from a judgment of the District Court of Kay County concerning the 1965 ad valorem assessment on the real estate and improvements of Frontier Grain Company.

The tract of land is located in Ponca City, Oklahoma, and the improvements, which were built in the 1920s, consist of grain elevators with a capacity of about 484,000 bushels, an office structure, and buildings formerly used in flour mill operations. The flour mill operations ceased in 1948 and the mill machinery was stripped or removed.

The assessed valuation of the property on January 1, 1965, for ad valorem tax purposes was set by the county assessor at $31,405. Frontier protested this valuation and the county board of equalization reduced the assessed valuation to $24,295. Frontier appealed to the District Court and on trial de novo (68 O.S.1961, Sec. 15.42, now 68 O.S.Supp.1965, Sec. 2461) the assessed valuation was fixed by the court at $13,682. In arriving at this figure, the District Court followed the provisions of Oklahoma Const. Art. 10, Sec. 8, and held that the property had a "fair cash value" of $69,000 on January 1, 1965, which was determined from a "fair voluntary sale" of the property in the early part of 1965. The trial judge then used the average assessment rate of 19.83 per cent, applicable to urban property, to arrive at an assessed valuation of $13,682.

The appealing Board of Equalization contends that the judgment is not sustained by the evidence and that the evidence is not sufficient to overcome the presumption of correctness of the determination of the value fixed by the Board.

The Board relies on the rule stated in Mid-Continent Building Company v. Board of Equalization of Tulsa County, 184 Okl. 525, 88 P.2d 626, and other cases, regarding the presumptions attaching to the order of the Board fixing the valuation of property for the purpose of taxation, and concluding that such presumptions can be overcome only by clear and convincing proof. These cases involved situations arising prior to the enactment of Laws 1941, Chap. 1a, p. 324, Sec. 42, now 68 O. S.Supp.1965, Sec. 2461, supra, providing for trial de novo on appeal to the District Court.

█ The rule applicable to the present appeal is found in Appeal of National Bank of Tulsa, Okl., 312 P.2d 495, where it is stated as follows:

"The judgment of the district court fixing the assessed valuation of property for ad valorem tax purposes, rendered on appeal and trial de novo from an order of the county equalization board denying taxpayer's protest to assessed valuation thereof as fixed by the county assessor, will not be vacated by this court on appeal for insufficiency of evidence to support it where said judgment is not against the clear weight thereof."

In the National Bank of Tulsa case we said appeals to the District Court, like that presently before us, were special statutory proceedings, and governed by equitable principles (citing Dolese Bros. Co. v. Nichols, 196 Okl. 508, 165 P.2d 982). We further stated that the judgment of the District Court carried with it the same presumption of correctness as attaches to any of its other judgments rendered in proceedings governed by equitable principles and would not be disturbed for insufficiency of the evidence to support it where it is not against the clear weight thereof.

The evidence in the present case reflected that in September, 1958, the prior owner of the property had offered to sell the property through a real estate agent for $150,000, but no sale was made; that in 1960 a price of $100,000 was asked for the property, and no sale was made; and in January, 1963, the then owner was willing to sell for $80,000, but no buyer was found. The real estate man who testified to the above matters stated that on January 1, 1965, the property had a fair market value of $71,000, and that $69,000 was close to his interpretation of the value.

The president of Frontier testified that the initial contact with the prior owner was about the first of the year, 1965, and that negotiations finally resulted in a contract being made on March 15, 1965, for sale of the property for $69,000. The sale was later completed. He further stated there was no compelling reason for either the purchase or sale of the property.

From our examination of all the pertinent testimony it is our conclusion, and it was also the trial judge's conclusion, that the percentage figure used by the county assessor in determining the assessed valuation of urban property for tax purposes was 19.83 per cent of its fair cash value.

The Board relied upon the testimony of an appraiser who gave the property a value of $95,000, based upon a correlation of values reached by using the method of cost of reproduction less depreciation and the method of capitalization of income. This witness also testified that the above sale in 1965 was not an "arm's length transaction" because a reasonable time had not expired between the date of offering and the date of sale and that in "this type of property" it was impossible to have an arm's length transaction within a period of four months. The trial judge expressed his disbelief as to this latter testimony.

There was no evidence as to sales of comparable properties with grain elevator facilities.

**320**

■ From our examination of the record, it is our opinion that the evidence sustains the trial court's conclusion that the sale of the property in 1965 was an arm's length transaction. The record also sustains the trial court's conclusion that there was no change in the value of the property between January 1, 1965, and the date of the sale contract, March 15, 1965.

The evidence in the present case is similar to that in Bliss Hotel Company v. Thompson, Okl., 378 P.2d 319. In that case the property actually sold at an "arm's length sale" in the first half of the year, and there was no change in the value of the property between the first of the year and the later consummation of the sale. On the basis of this evidence we reversed the judgment of the lower court which upheld the higher valuation fixed by the Board of Equalization. Therein we quoted the Constitutional provision, Art. 10, Sec. 8, providing that property subject to ad valorem tax "shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale", except that it should not be assessed for taxation at more than thirty-five per cent thereof. We held that the sale, under the above facts and circumstances, was competent and substantial evidence of the value of the property for tax assessment under the above constitutional provision.

■■ We are of the opinion and hold in the present case that the actual bona fide and arm's length sale of the property was, under the facts and circumstances in this case, competent and substantial evidence of the fair cash value of the property. We further hold that the judgment of the lower court is not clearly against the weight of the evidence.

Affirmed.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, BLACKBIRD, JACKSON, LAVENDER and McINERNEY, JJ., concur.