Appeal of BILLINGS COMMUNITY ELE-
VATOR, INC., in the Matter of the Assess-
ment of Ad Valorem Taxes For the Year
1969.

No. 44023.

Supreme Court of Oklahoma.

July 25, 1972.

As Amended on Denial of Rehearing
June 18, 1973.

Albert D. Lynn, E. J. Armstrong, Mike
Tapp, E. B. Lee, Oklahoma Tax Comm.,
Oklahoma City, Judson H. Pierce, Asst.
Dist. Atty., Perry, for appellant, L. L.
Hansen, County Assessor of Noble County.

Phipps, Johnson & Holmes by Charles A. Johnson, Ponca City, for appellee, Billings Community Elevator, Inc., a corporation.

LAVENDER, Justice.

This is an appeal, by the County Assessor of Noble County, Oklahoma, from a judgment of the district court of that county after trial de novo in an appeal from an order of the county board of equalization concerning the valuation of certain personal property for ad valorem tax purposes.

At the time of his death in 1967, William Gordon Hayton was the owner of four sets of improvements located upon four separately described tracts of leased land in Billings, Oklahoma. The improvements consisted of three grain elevators, two feed-mill buildings, two "flat" warehouses for grain and two for fertilizer, and several appurtenant smaller buildings, all of which Mr. Hayton operated as a single business unit. On March 14, 1969, the executrix of his will filed with the county assessor an assessment list for 1969, indicating a valuation for tax purposes of $64,000 for the improvements and $7,500 for "Mdse., Stocks & Fixtures." The county assessor accepted and used those values as the assessed values of the items.

On April 30, 1969, Billings Community Elevator, Inc. (hereinafter called the corporation), which had entered into an agreement to purchase the assets of the business, filed with the county's board of equalization a complaint alleging that the $64,000 assessed valuation was excessive and should be reduced to a fair and reasonable amount. The $7,500 item was not mentioned and is not considered herein. The attorneys who filed the complaint upon behalf of the corporation had notice of a hearing thereon, set for May 12, 1969, but no one appeared in support of the complaint. The board voted to let the assessment stand and mailed notice of such action to the attorneys for the corporation. Four days later, the corporation filed with the clerk of the board a notice of appeal from that order to the district court. On the same day, the corporation filed in the district court an instrument reciting the filing of the complaint with the board, the board's action thereon, and the filing of the notice of appeal, and praying the court to reduce the $64,000 assessment for the year 1969 to a proper assessment based upon the fair cash value of the property as of January 1, 1969. Several days later, an instrument was filed in the case, in which the estate of William Gordon Hayton, as "technical" owner of the property in question, joined in the corporation's application for relief.

After trial de novo as provided by statute, the court entered its order reducing the assessed valuation of the property in question from the $64,000 shown on the records of the county to $39,100.00 and ordered the county assessor and county treasurer to make the necessary corrections on the county's records. According to the journal entry thereof, that order is based upon the court's findings that the fair cash value of the property in question, as of January 1, 1969, was $170,000.00 and the county's assessment average was approximately 23 per cent of fair cash value. That is the order involved in the present appeal by the county assessor.

The assessor presents his assignments of error under two propositions: First, that the trial court erred in overruling his motion, at the commencement of the trial, to dismiss the proceeding; and, second, that the trial court's findings and judgment are contrary to the clear weight of the evidence.

His argument under the first proposition is to the effect that, since no one appeared before the board in support of the complaint and no evidence was offered in support thereof, there was nothing for the district court to review, thus making the proceeding in the district court an original or "first instance" action for relief which, under the statutes, the court could grant only on review of the board's order.

The 1965 statute appearing as 68 O.S. 1971 § 2460 provides for the filing, with the county board of equalization, of complaints against the assessed valuation of property, and for the hearing thereof by the board, and the confirmation, correction or adjustment of the valuation, as may seem just.

The 1965 statute appearing as 68 O.S. 1971 § 2461 provides, in subsections (a) and (c) thereof:

"(a) Both the taxpayer and the County Assessor shall have the right of appeal from any order of the County Board of Equalization to the District Court of the same County, and right of appeal of either may be either upon questions of law or fact including value, or upon both questions of law and fact. In case of appeal the trial in the District Court shall be *de novo*, but no matter shall be reviewed by the District Court which was not presented to the Board *in the complaint filed with it."* (Emphasis supplied)

"(c) Either the taxpayer or the County Assessor may appeal from the District Court to the Supreme Court, as provided for in the Code of Civil Procedure, but no matter shall be reviewed on such appeal which was not presented to the District Court."

The 1965 statute now appearing as 68 O.S.1971 § 2468 provides, in subsection (a) thereof:

"(a) The proceedings before the Boards of Equalization and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected or taxes abated. * * *."

In one of the four cases cited by the assessor under this proposition, In re Assessment of Buffalo Northwestern Railroad Company, Woods County (1922), 85 Okl. 93, 204 P. 640, the State Board of Equalization had dismissed a county's protest against its assessment of a railroad's property in the county when the county presented no evidence in support of its protest. This court dismissed the county's

appeal therefrom because there was nothing to review. Unlike appeals from a county board of equalization to the district court, those appeals are not tried de novo. In two of the cases, Chapman, County Treasurer, et al. v. Draughons School of Business, Inc. (1955), Okl., 287 P.2d 903, and Billingsley, County Treasurer v. North (1956), Okl., 298 P.2d 418, a taxpayer, without filing a complaint with the county board of equalization, sought direct relief in the district court from alleged excessive valuation of taxable property. This court held that the taxpayer must avail himself of the statutory remedy and cannot resort to the courts in the first instance. In the fourth case, In re Sprankle Company (1917), 69 Okl. 178, 170 P. 1147, the property owner had filed a complaint with the county board of equalization and appealed to the district court from the board's denial of the complaint, but had not paid the taxes based upon the assessor's valuation as provided by a statute similar to 68 O.S. 1971 § 2467. Those cases do not support the assessor's argument.

In harmony with the statute now appearing as 68 O.S.1971 § 2461, this court held in Appeal of National Bank of Tulsa (1957), Okl., 312 P.2d 495, and in the Matter of Appeal of National Bank of Commerce of Tulsa (1957), Okl., 316 P.2d 175, that:

"In a trial de novo in the district court on appeal from the decision of the county equalization board denying a protest to the assessed valuation of taxable property as fixed by the county assessor, the issues to be tried are those raised by the protest filed with said board."

One or the other of those cases is followed in similar cases reported at Appeal of Thompson Building Co., Okl., 316 P.2d 179; Appeal of Tuloak Building Corp., Okl., 316 P.2d 597; Appeal of Southwestern Art Ass'n, Okl., 316 P.2d 609; Assessment for Year 1953 etc., Okl., 317 P.2d 242; Appeal of Boy Scouts, Okl., 317 P.2d 262, and Appeal of Stanolind Building Corp., Okl., 317 P.2d 735.

The complaint filed with the county board of equalization in the instant case specifically raises the question of excessive taxable value of the property in question, as fixed by the county assessor. The evidence, if any, concerning value of the property presented to the board is wholly immaterial to the district court's determination, by trial de novo, of the question of taxable value presented in the complaint filed with the board.

The trial court properly overruled the assessor's motion to dismiss the proceeding before it.

Before considering the evidence in connection with the assessor's remaining proposition, we note that, in the cases just cited, appearing in volumes 312, 316 and 317 of the Pacific Reporter, Second Series, this court also held that:

"The judgment of the district court fixing the assessed valuation of property for ad valorem tax purposes, rendered on appeal and trial de novo from an order of the county equalization board denying taxpayer's protest to assessed valuation thereof as fixed by the county assessor, will not be vacated by this court on appeal for insufficiency of evidence to support it where said judgment is not against the clear weight thereof."

In weighing the evidence in such a case, we must consider the additional rule stated in the same cases:

"In a trial de novo in the district court on appeal from the decision of the county equalization board denying a protest to the assessed valuation of taxable property fixed by the county assessor, the burden of proof rests upon the protestant because he is the party seeking affirmative relief."

Also, the present appeal is taken by the county assessor, and subsection (e) of the 1965 statute appearing as 68 O.S.1971 § 2461 provides that:

"In all appeals taken by the County Assessor the presumption shall exist in favor of the correctness of the County Assessor's valuation and the procedure followed by him."

In explaining why the corporation had filed the complaint with the board of equalization, H. B. Evans, a Billings banker and insurance agent, and administrator with will annexed of the estate of William Gordon Hayton, testified that, at the time of his death, Mr. Hayton was bankrupt, or nearly bankrupt, with indebtedness of about $700,000, including around $220,000 for stored wheat that was missing; that a sale of 1,300 acres of land under court order had produced approximately $387,000, and only the elevator assets remained available for payment of the rest of the indebtedness; that the corporation was organized in an attempt to save the elevator for the community; that 200,000 shares of stock, par value of $1 per share, were issued, some for cash but mostly in exchange for assignments of claims for the value of missing storage wheat; and that there was a court-approved agreement between him, as administrator with will annexed, and the corporation, under which the elevator assets would be transferred to the corporation and the corporation would assume, and pay, some estate indebtedness, but he did not remember any details of the agreement. The court order concerning the agreement was not introduced in evidence.

Later, as a witness for the county assessor, Mr. Evans testified that, on June 11, 1969, as a general insurance agent, he wrote an insurance policy, which was not a cost-of-replacement policy, with the corporation named as the insured, covering the actual value of the buildings involved herein but not to exceed $312,000.00.

The complainants produced only one witness concerning the value of the improvements in question. He was Dale H. Johnson, of Enid, Oklahoma, who had been in the grain business, feed business and seed business for about 45 years and had known Mr. Hayton, and been familiar with his elevator complex, for many years. His company owns or operates 17 elevators, with a total storage capacity of approximately

15,000,000 bushels, in Oklahoma and other states. Since the 1969 wheat harvest began, they have been operating this elevator under a written lease (not produced) from the corporation, on a "commission" basis. They pay the corporation "so much a bushel" for grain received and "a percentage" of the storage income. Only two of the buildings were any good for storing grain. Both are "flat" storage—flat-sided metal buildings with concrete floors. One of them includes an elevator, is on a railroad siding, and has a grain-storage capacity of 600,000 bushels. The other one has a grain-storage capacity of 400,000 bushels, but has no elevator and is not on a railroad siding.

Concerning value, he stated that, when "we" buy or build an elevator, we figure how much it costs per bushel. As of January 1, 1969, five cents a bushel would be a high value for these buildings, in their condition, and, with a million-bushel capacity, their fair cash value would be about $50,000. Taking into consideration "your scales, your office and so forth," the total value would be around $75,000.

On cross-examination, Mr. Johnson stated that, in arriving at his valuation, he had considered only one of the elevators—the one in the 600,000 bushel building, and had not considered the feed mill or the warehouses that had been used for the storage of feed or fertilizer. One factor he mentioned was that the buildings have no value unless you get the wheat and, when their deal was made, the wheat harvest was upon them and something had to be done quickly for storage space in the community for the wheat.

The county assessor, called as a witness for the complainants, testified that the last "official" notice of the county ratio (from the Tax Commission's study) was for real property for 1967. It showed that ratio as 20.87 per cent. On cross-examination, he testified that there is no way of arriving at a ratio for personal property, but for the four years that he had been the County Assessor of Noble County he had used 30 per cent of fair cash value for personal property. This was the only evidence concerning a county ratio for the assessment of personal property.

As a witness in his own behalf, the county assessor, referring to the respective assessment lists (which were received in evidence), testified that the property in question was rendered by Mr. Hayton for assessment, and actually assessed, at $90,000 for 1965, and at $80,000 for 1966 and 1967, and was rendered by the executrix for assessment, and actually assessed, at $64,000 for 1968, which was intended to be, and was, a reduction of 20 per cent from the 1967 valuation. On the basis of assessment of personal property at 30 per cent of fair cash value, this would indicate that the fair cash value was estimated at approximately $266,000 for 1966 and 1967, and at approximately $213,000 for 1968.

The county assessor without objection also testified that he had examined the inventory and appraisement of the estate of William Gordon Hayton filed in the case by the executrix and it shows this property appraised at $328,050. He identified the three appraisers who signed it as (a) the president of the First National Bank at Perry, Oklahoma, and (b) a Perry abstractor who did appraising on the side, and (c) the operator of a grain elevator at Braman, Oklahoma.

A written report to the county assessor, under date of August 18, 1969, by Dewey King of Enid, Oklahoma, was received in evidence without objection. The report states that he is a member of the Society of Real Estate Appraisers, and has completed its course in principles and techniques of real estate appraising, and three courses given by the Institute of Real Estate Appraisers; that he is actively engaged as a staff appraiser for an Enid federal savings and loan association, and, in that capacity alone has made over 4,500 appraisals of residential and commercial properties; and that he has done appraisal work for another federal savings and loan association, an Oklahoma City bank, a tele-

phone company, an insurance company, two oil companies, the Kay County Board of Equalization, and the State Highway Department.

Mr. King estimated the value of these improvements by three different, standard and accepted methods. The "cost" approach (cost less depreciation) indicated a value of $368,000. The "income" approach (estimated annual rental income, capitalized over 15 years after deducting annual fixed expenses) indicated a value of $230,000 on the basis of the 2¢ per bushel of grain received and 25 per cent of grain-storage income provided in the lease from the corporation to the witness Johnson's company. The "market" approach, in which a number of actual recent sales of comparable properties are considered, the most nearly similar property chosen, and adjustments made for pertinent differences, indicated a value of $235,000. In this last-mentioned approach, he divided the June 24, 1969 sale price of the elevator property chosen as most nearly similar to this property by the storage capacity in bushels, getting a sale price of 35¢ per bushel of capacity, which he adjusted to 20¢ per bushel because of a marked difference in capacities, and multiplied that by the bushel-capacity (1,234,665 bushels) of the buildings involved herein. Deducting his estimate of the value of the scales and other equipment not included in the assessment of the improvements, gave the "market" value of $235,000 at which he appraised the property as of June 24, 1969.

The situation herein is not at all comparable to the situation in County Board of Equalization of Kay County v. Frontier Grain Company (1969), Okl., 454 P.2d 317. In that case, the complainant appealed to the district court from an order of the county board of equalization reducing the 1965 assessed valuation of a tract of urban land with grain elevator improvements thereon from $31,405 to $24,295. The evidence showed that, on March 15, 1965, the complainant had purchased the property in a bona fide "arms-length" transaction with no compelling reason for either the sale or

the purchase of the property, for $69,000. Based upon a correlation of values reached by using the cost-less-depreciation approach and the capitalization-of-income approach, an appraiser estimated the fair cash value of the property at $95,000. He also testified that, having been closed within four months after negotiations commenced, the above-mentioned transaction could not be considered an "arms-length" sale. The trial court fixed the taxable value of the property at 19.83 per cent (the assessment ratio which, the evidence showed, the county assessor used for urban property) of $69,000, or $13,682. This court affirmed the judgment as not being clearly against the weight of the evidence.

In the present case, the evidence introduced by the county assessor, particularly the appraisal report by Mr. King and the assessor's testimony that he used an assessment ratio of 30 per cent of fair cash value in assessing personal property, more than supports the assessment of this personal property for 1969 as made by the assessor and approved by the county board of equalization. The fair cash value of $170,000 used by the trial court in its computation is between the $75,000 estimate made by the complainants' witness Johnson and the $235,000 estimate made by the appraiser King. However, unlike Mr. King, Mr. Johnson gave no basis for the per-bushel value he used in estimating the fair cash value of the property and did not consider all of the improvements in question. We think that, as a whole, Mr. Johnson's testimony was insufficient to meet the complainants' burden of overcoming the presumption in favor of the correctness of the county assessor's valuation and the procedure followed by him.

Simple arithmetic shows that the $170,000 fair cash value used by the trial court in arriving at the ordered assessed value for 1969 is, roughly, 20 per cent less than the approximate $213,000 fair cash value obviously used as the basis for the 1968 taxable value of the property as fixed by the county assessor and approved by the

county board of equalization. That is the same percentage by which the 1967 fair cash value and taxable value of the property were reduced by the county assessor and the equalization board for 1968. No evidence in the record supports such a 20 per cent reduction in fair cash value for 1969, or the assessment ratio of 23 per cent used by the trial court in assessing this personal property at $39,100 instead of the $64,000 taxable value as fixed by the county assessor and approved by the equalization board.

When the above-mentioned presumption and burden of proof are considered, as they must be, the findings and judgment of the trial court are clearly against the weight of the evidence.

Judgment reversed and cause remanded to the trial court with directions to vacate the judgment and affirm the order of the county board of equalization.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, IRWIN, McINERNEY and BARNES, JJ., concur.

HODGES, J., dissents.