2007 OK CIV APP 15

**Tommie L. MATTHEWS, Plaintiff/Appellant,**

v.

**Ronnie FUNCK, Canadian County Assessor and Canadian County Board of Equalization, Defendants/Appellees.**

**No. 103351.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 9, 2007.

Tommie L. Matthews, Yukon, OK, Pro Se Appellant.

Paul A. Hesse, Assistant District Attorney, Canadian County, El Reno, OK, for Defendants/Appellees.

JOHN F. FISCHER, Judge.

¶ 1 Tommie L. Matthews appeals from that portion of the Trial Court's summary judgment order affirming the increase in the assessed value of his property. Matthews claims that the Trial Court erred in determining that he was not entitled to the benefit

of the limitation on fair cash value of his homestead provided for in Okla. Const. art. 10, § 8C(A) for the 2004 tax year. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S.2001 and Supp.2003, ch. 15, app. 1. Based on our review of the record on appeal and applicable law, we affirm.

## BACKGROUND FACTS

¶ 2 As of January 1, 2004, the fair cash value of property owned by Sharon Bycroft was assessed at $81,037 by the Canadian County Assessor. On April 2, 2004, Matthews purchased the property from Bycroft for his homestead. On January 10, 2005, Matthews applied for and was granted the homestead exemption from ad valorem tax authorized by 68 O.S.2001 § 2889, beginning with the 2005 tax year. On March 14, 2005, Matthews applied for and was likewise granted the limitation on fair cash value authorized by Article 10, section 8C of the Oklahoma Constitution (Senior Freeze) beginning with the 2005 tax year. Matthews then received a Notice of Change in Assessed Value of Real Estate from the Assessor dated April 8, 2005, which assessed the property's fair cash value, beginning January 1, 2005, at $95,103.

¶ 3 Matthews filed a protest of the Assessor's refusal to apply the Senior Freeze to the 2004 value and pursued his administrative remedies with the Canadian County Board of Equalization without success.[1] Matthews then appealed the Board's decision to the District Court of Canadian County naming the Assessor and Board (collectively, Assessor) as defendants. On July 18, 2005, Matthews moved for summary judgment arguing that the Assessor had improperly increased the assessed value of his property from its 2004 value contrary to Article 10, section 8C. Following a hearing, the Trial Court granted summary judgment in favor of the Assessor. Matthews appeals.[2]

---

1. Matthews did not protest, however, the Assessor's determination that he was entitled to the section 2889 homestead exemption beginning with the 2005 tax year.

2. Matthews was granted judgment on his second ground concerning the method used by the As-

sessor to determine his "gross household income," but denied judgment on his third ground requesting a finding that the Assessor committed willful error. Neither of these issues is part of this appeal. Further, because Matthews appears *pro se,* we apply a liberal standard in construing

## STANDARD OF REVIEW

■ ¶4 On appeal to the district court of an order of a county equalization board fixing the assessed valuation of property for ad valorem tax purposes, the trial court engages in a *de novo* review. 68 O.S.2001 § 2880.1 (A). Appeal to this Court of a trial court's grant of summary judgment also requires *de novo* review. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053. In conducting a *de novo* review, the appellate court exercises plenary, independent and non-deferential authority to examine a trial court's legal rulings and factual determinations. *Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, ¶2, 73 P.3d 865, 867; *Jackson v. Bd. of Equalization of Pushmataha County*, 1995 OK CIV APP 35, ¶12, 892 P.2d 673, 676.

## DISCUSSION

■ ¶5 The question presented in this appeal is whether a taxpayer who acquires property after March 15, but qualifies for the Article 10, section 8C limitation on fair cash value at the time of acquisition, is entitled to have the fair cash value of the property limited to its assessed value in the year of acquisition rather than the year in which the application for the limitation is approved.

¶6 By a vote of the people in 1996, Article 10, section 8 of the Oklahoma Constitution was amended to provide for: (1) an annual five percent limitation on any increase in a property's value (Section 8B), and (2) a limitation on the assessed fair cash value of property owned by certain senior citizens (Section 8C). It is undisputed that Matthews qualified for the Senior Freeze when he purchased the property in April 2004. The applicable version of section 8C(A) of Article 10 provides, in part:

Despite any provision to the contrary, beginning January 1, 1997, the fair cash value, as determined by law, on each homestead of an individual head of household whose gross household income from all sources for the preceding calendar year did not exceed Twenty-five Thousand Dollars ($25,000), and which individual head of household is sixty-five (65) years of age or older, shall not exceed the fair cash value placed upon the property during the first year in which the individual head of household was sixty-five (65) years of age or older and had gross household income from all sources which did not exceed Twenty-five Thousand Dollars ($25,000).[3]

¶7 Although Matthews occupied the property as his homestead beginning in April of 2004, the Assessor contends that the earliest he could grant Matthews the Senior Freeze was for the 2005 tax year, the year in which Matthews filed an application prior to March 15. The Assessor takes this position for two reasons. The Assessor argued in the hearing before the Board of Equalization that he is required to assess property each time it is sold. In his summary judgment response, he argued that, by statute, applications for the Senior Freeze filed after March 15 can only be granted for the tax year following the year in which the application is filed. Because Matthews bought the property after March 15, 2004, the Assessor contends that the "frozen" value is the fair cash value as of January 1, 2005.

¶8 The Assessor relies for his second argument on section 2890.1(A), of Title 68, entitled, "Application for Limit on Fair Cash Value of Homestead Property." That statute provides, in part:

The application for a limit on the fair cash value of homestead property as provided for in Section 8C of Article X of the Oklahoma Constitution shall be made before March 15 or within thirty (30) days from and after receipt by the taxpayer of a

---

and interpreting his submissions, even though this is not necessary based on his demonstrated understanding of the legal issues involved in this appeal and his ability to clearly articulate his position. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

3. Okla. Const. art. 10, § 8C. This is the provision in effect when Matthews purchased the property in 2004. It was amended effective January 1, 2005, to link the applicable income amount to the estimated median income determined annually by the Department of Housing and Urban Development. That amendment is not relevant to this appeal because Matthews qualifies pursuant to either income standard.

notice of valuation increase, whichever is later.[4]

According to the Assessor's interpretation of section 2890.1(A), a qualifying senior who acquires property on March 16 is not entitled to the Senior Freeze for that year even though his qualifying neighbor, acquiring property a day earlier, would be entitled to the freeze.[5] Matthews points out that there is no such limitation in the Constitution. He argues that the fair cash value of his property "shall not exceed the fair cash value placed upon the property during the first year in which" he was sixty-five or older and made less than the specified income. All parties agree that 2004 was the first year in which Matthews met those requirements.

¶ 9 Neither party cites any case law construing the relevant constitutional or statutory provisions and we have found none. Were we confined in our analysis to the language of section 8C, we would find it difficult to argue with Matthews's position. But we are not so confined and the seemingly arbitrary consequence of the Assessor's position is not only dictated but also resolved by the Constitution and well-settled principles of statutory construction.

¶ 10 Article 10 of the Constitution provides a comprehensive method for determining the value of property for purposes of taxation. Section 8(A) specifies the method of valuing real and personal property for ad valorem taxes. With respect to real property, it is to be valued according to its "highest and best use as of the calender year next preceding the first day of January on which the assessment is made."

█ ¶ 11 Prior to the 1997 amendments, real property was valued each year, and any increase in value was reflected in the owner's taxes for that year.[6] That increase was inherited by any new owner if the property sold. Consequently, reassessment at the time of a sale was not necessary because it would occur annually as required by section 8(A): "The transfer of property without a change in its use classification shall not require a reassessment...." Therefore, the only time the property was required to be assessed, other than annually, was on a change in use. With the adoption of the 1997 amendments, this method changed.

¶ 12 Section 8B of Article 10 limits to five percent (5%) the amount an assessor can increase the fair cash value of real property in any one year. While that limitation is not an issue in this appeal, language in that provision is controlling. The pertinent part provides:

The provisions in this section shall not apply in any year when title to the property is transferred, changed, or conveyed to another person.... If title to the property is transferred, changed, or conveyed to another person, the property shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution.

¶ 13 In order to prevent the property from being perpetually subject to the five percent limitation, section 8B included a new require-

---

4. 68 O.S. Supp.2005 § 2890.1 (A). The June 5, 2000 version of 68 O.S. § 2890.1 was in effect when Matthews purchased the property. The June 4, 2004 version was in effect when Matthews filed his application, and the March 15, 2005 version was in effect when Matthews received his Notice of valuation increase. None of these amendments changed the wording of section A. Therefore, we will refer to the 2005 version of the statute.

5. The Assessor's interpretation is supported by an Oklahoma Tax Commission Rule implementing the provisions of section 2890.1, which provides, at Oklahoma Administrative Code, OAC 710: 10–1–4(4):

In order to be eligible for the senior valuation limitation, the individual must apply at the coun-

ty assessor's office by completing OTC Form 994 (Revised–04), Application for Property Valuation Limitation and Additional Homestead Exemption. The application must be made between January 1 and March 15.... The limitation will be in effect for the tax year in which the application is made and approved, based on the current year valuation."

6. 2001 OK AG 36, ¶ 14. "Attorney General opinions are persuasive authority, and silence by the Legislature may be regarded as acquiescence or approval of the interpretation placed upon the provision by the Attorney General." *McMullan v. Oklahoma County Bd. of Tax Roll Corrs.*, 2005 OK CIV APP 61, ¶ 9, 119 P.3d 781, 787; *Nat'l Cowboy Hall of Fame and Western Heritage Ctr. v. State ex rel. Oklahoma Human Rights Comm'n*, 1978 OK 76, ¶ 11, 579 P.2d 1276, 1279.

ment for assessment each time the property sold. The new owner would benefit from the five percent limitation as long as ownership of the property did not change, but the starting point, for ad valorem tax purposes, would be the value of the property at the time it was acquired. The five percent limitation was, therefore, linked to ownership of the property, not the value of the property.

¶ 14 In this case, the Assessor valued the property as residential real property while it was owned by Bycroft. Matthews's acquisition of the property did not change its use. Consequently, reassessment based on a change in use was not required by section 8. Reassessment based on change in ownership is a different matter.

¶ 15 Section 8C was adopted at the same time section 8B was adopted. The five percent limitation of section 8B is available to all property owners without respect to age or income. It is available to Matthews in any year in which his income exceeds the amount specified in section 8C.[7] But, the five percent limitation would not have been available to Matthews for the 2004 tax year. Transfer of this property occurred after January 1, 2004, the effective date on which the value was established for the 2004 tax year, and section 8B clearly required reassessment of that value as a result of Matthews's purchase.

¶ 16 As Matthews effectively argues, the "revaluation on transfer" requirement of section 8B is not repeated in section 8C. The determinative language, however, is in the first sentence of section 8C(A): "the fair cash value, *as determined by law*, on each homestead ...." (emphasis added). Section 8C does not contain a method for determining the "fair cash value" of property for ad valorem tax purposes and therefore requires reference to other tax provisions. Section 8(A)(2) provides the general method for determining this value for real property. And section 8B provides that a new valuation shall be made pursuant to section 8 each time "title to the property is transferred, changed or conveyed to another person." That is the method prescribed "by law" for determining fair cash value.

¶ 17 We note that the last sentence of section 8C(A) makes specific reference to section 8.

> If the individual head of household ceases to own and occupy the property, ... the fair cash value of the property shall be determined as if the provisions of Section 8 of Article X of the Constitution of the State of Oklahoma or any other provisions relating to a limitation on the fair cash value of locally assessed real property had been in effect during the time the property was valued pursuant to the provisions of this section.

There is nothing in the record to show whether Matthews's seller, Bycroft, qualified for the Senior Freeze. Assuming that she did, the last sentence of section 8C(A) requires redetermination of the property's value pursuant to section 8 when she "cease[d] to own and occupy the property." While not as explicit as the reassessment on transfer language of section 8B, this language undermines Matthews's position. Further, in construing this provision, the Oklahoma Attorney General has concluded that "any other provisions relating to a limitation on the fair cash value of locally assessed real property" includes section 8B.[8] Matthews acknowledges that section 8B would require reassessment when he acquired the property from Bycroft.

¶ 18 The next to the last sentence of section 8C(A) describes a specific example that is also at odds with Matthews's interpretation:

> For any individual head of household who is sixty-five (65) years of age or older prior to January 1, 1997, and has gross household income from all sources of Twenty-five Thousand Dollars ($25,000.00) or less in calendar 1996, the fair cash value of the real property shall be the fair cash value placed upon the property on January 1, 1997.

That example makes clear that the value of a homestead owned by a sixty-five-year-old making less than $25,000 in 1996 could not be increased above the value established January 1, 1997, even though "the first year in

---

7.  1997 OK AG 27, ¶ 12(2).

8.  1997 OK AG 27, ¶ 11.

which the individual … was sixty-five (65) years of age or older and had gross household income … of Twenty-five Thousand Dollars ($25,000.00) or less" was 1996. Similarly, it would be inconsistent to interpret this provision as also freezing at January 1, 1997, the value of a homestead owned by a sixty-five-year-old who made $30,000 in 1996 but less than $25,000 in 1997. The record in this appeal does not reflect Matthews's income for 2003. His application for the freeze was based on his 2004 income.

¶ 19 The process by which ad valorem taxes are assessed and collected is ultimately detrimental to the position argued by Matthews. Until the value of the property is determined as of January 1 in any particular year, the Assessor cannot account for applicable exemptions and determine the amount of tax.[9] On January 1, 2004, when the property value was established for the year at issue, Matthews had not nor could he have applied for the Senior Freeze. More importantly, the property was not his homestead. Section 2888(A)1 of Title 68 defines homestead as "the actual residence of a natural person." This property may have been the homestead of Bycroft on January 1, 2004, but it was not Matthews's homestead. According to Matthews, the ad valorem taxes for 2004 were prorated between himself and Bycroft, as is customary when real property is sold during the year. For the 2004 tax year, therefore, Matthews paid the taxes determined at the time Bycroft owned the property and based on whatever exemptions and limitations she was entitled to receive. Exemptions and limitations personal to Matthews could not be applied to the property until the following year. This is precisely the method employed by the Assessor in this case.

■ ¶ 20 This interpretation of section 8C not only harmonizes its provisions with the other sections of Article 10, and particularly section 8B, but also allows for a construction of section 2890.1 that is consistent with the Constitution.[10] Matthews's interpretation of section 8C does not.

¶ 21 Furthermore, our construction of section 8C avoids several problems created by Matthews's interpretation. First, "revaluation on transfer" avoids the arbitrary selection of March 15 as the determinative date. As discussed, there is no logical reason why a qualifying senior who purchases property on March 15 should be entitled to the freeze while a qualifying senior who purchases on March 16 would not. That result is not constitutionally mandated and, therefore, Matthews's interpretation would call into question the enforceability of section 2890.1.

¶ 22 Second, "revaluation on transfer" would avoid the same problem with respect to the date the notice of increase in valuation is actually received. In this case, notice was received on or shortly after April 8, 2005. Pursuant to section 2890.1, Matthews had thirty days from that date to file his application. The additional time after notice of a change in value, to the extent that occurs after March 15, is important for due process reasons. Nonetheless, the date the Assessor actually revalues the property is completely arbitrary with respect to the length of time one owns property as that may justify any disparate tax treatment.

¶ 23 Third, "revaluation on transfer" ties tax treatment to ownership, which allows periodic increases in property values-a necessary aspect of the ad valorem tax system. With the constitutional limitation on the percentage of a property's value that can be taxed, and the inflationary increase in the cost of services funded by those taxes, it appears that accounting for increased value of property is necessary to offset the increase in the cost of services. While ad valorem taxes are based on the value of property, exemptions from and limitations to

---

9. See 2005 OK AG 27, ¶¶ 6–10, and 2001 OK AG 36, ¶ 1, for a general discussion of this process.

10. Constitutional provisions are interpreted to give effect to the intent of the people voting on them. Draper v. State, 1980 OK 117, ¶ 8, 621 P.2d 1142, 1145. Intent is determined by the language of the provision. McCurtain County Excise Bd. v. St. Louis–San Francisco Ry. Co., 1959 OK 100, ¶ 17, 340 P.2d 213, 216 (quoting Shaw v. Grumbine, 1929 OK 116, 137 Okla. 95, 278 P. 311). See also Chicago R.I. & P. Ry. Co. v. Beatty, 1911 OK 332, 34 Okla. 321, 118 P. 367.

those taxes are personal to the property owner.

¶ 24 Finally, while there is no lack of confusion and contradiction in the constitutional and statutory provisions at issue in this case, we find this interpretation most consistently harmonizes these provisions with reason and common sense. *Cowart v. Piper Aircraft Corp.*, 1983 OK 66, ¶ 4, 665 P.2d 315, 317.

## CONCLUSION

¶ 25 After purchasing property in 2004, Matthews applied for and was granted the homestead exemption authorized by 68 O.S. 2001 § 2889, and the Senior Freeze authorized by Article 10, section 8C of the Oklahoma Constitution beginning with the 2005 tax year. The Assessor properly valued the property as of January 1, 2005. The Trial Court correctly denied Matthews's summary judgment motion seeking to fix the 2004 value of this property as the assessed value subject to the Senior Freeze. Therefore, we affirm the judgment of the Trial Court.

¶ 26 AFFIRMED.

WISEMAN, P.J., and GOODMAN, J., concur.