2008 OK 44

**CIMMARRON TRANSPORTATION, LLC, Plaintiff/Appellant,**

v.

**Denise HEAVNER, County Assessor of Cleveland County, State of Oklahoma; Saundra DeSelms, County Treasurer of Cleveland County, State of Oklahoma; and The Cleveland County Board of Equalization, Defendants/Appellees.**

No. 103,197.

Supreme Court of Oklahoma.

May 6, 2008.

---

Mike Mordy, Mordy & Mordy, P.C., Ardmore, OK, for Appellant.

David J. Batton, Assistant District Attorney, Norman, OK, for Appellees.

HARGRAVE, J.

¶ 1 In 2002, Cimmarron Transportation, LLC, purchased inactive pipeline in the State of Oklahoma through two separate transactions. By Purchase and Sale Agreement effective January 1, 2002, Cimmarron purchased from EOTT Pipeline Limited Partnership and EOTT Energy Operating Limited Partnership ("EOTT") 1,825.94 miles of pipeline in Oklahoma for $258,068.00; 64.5 miles of that pipeline are in Cleveland County. Effective October 1, 2002, Cimmarron purchased 795 miles of pipeline from Spectrum Field Services, Inc., for $115,000.00; 61.2 miles of this pipeline are in Cleveland County. The pipeline was subject to ad valorem taxation in 2003 in each county through which the pipeline runs. The appeal is from a judgment of the district

court of Cleveland County upholding the Cleveland County assessor's valuation of 125.7 miles of inactive pipeline in Cleveland County, Oklahoma, for 2003 ad valorem taxes.[1] Because we find that the trial court failed to apply the proper de novo standard of review, the cause must be reversed and remanded.

¶2 Art. 10 § 8, Oklahoma Constitution, provides that all property that may be taxed ad valorem shall be assessed at its fair cash value. "Fair Cash Value" of property is defined at 68 O.S. § 2802(18) as:

"The price at which a willing buyer would purchase property and a willing seller would sell property if both parties are knowledgeable about the property and its uses and if neither party is under any undue pressure to buy or sell ..."

Title 68 O.S.2001 § 2817(A) provides that all taxable personal property shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, as of January 1.

■ ¶3 We have interpreted "fair cash value" to be synonymous with "fair market value." *Tulsa Co. Bd. Of Equalization v. Independent Sch. Dist. No. 1 of Tulsa,* 743 P.2d 1076, 1078; *Bliss Hotel Co. v. Thompson,* 1962 OK 234, 378 P.2d 319. A "fair voluntary sale" is a "bona fide, arms length (sic) sale unaffected by any special depressing circumstances." *Bliss Hotel* at p. 322.

¶4 Three methods of valuation are defined in the Oklahoma statutes:

The cost approach: a method used to establish the fair cash value of property involving an estimate of current construction cost of improvements, subtracting accrued depreciation and adding the value of land. 68 O.S. § 2802(14).

The income and expense approach: a method to estimate fair cash value of a property by determining the present value of the projected income stream. 68 O.S. § 2802(20).

The sales comparison approach.: the collection, verification and screening of sales data, stratification of sales information for purposes of comparison and use of such information to establish the fair cash value of taxable property. 68 O.S. § 2802(25).

¶5 In assessing Cimmarron's pipeline for the purpose of ad valorem taxes for year 2003, the Cleveland County assessor used the replacement cost method of valuation, using a schedule prepared by Visual Lease Services. The replacement cost method, based on replacement cost less depreciation, resulted in a value of $592,979.00 being attributed to the pipeline. Cimmarron contended that the actual sales price it paid for the pipeline should have been used as the basis for determining fair cash value. In fact, Cimmarron insists that use of comparative sales is *mandated* by the Oklahoma Constitution. Cimmarron's purchase price for the 125.7 miles in Cleveland County was approximately $17,918.70.

¶6 Cimmarron appealed to the Cleveland County board of equalization. The board of equalization reduced the valuation to $296,489.00.[2] Cimmarron then appealed to the district court for trial de novo pursuant to 68 O.S.2001 § 2880.1.

■ ¶7 Appeals from decisions of the county board of equalization are controlled by 68 O.S.2001 § 2880.1. Subsection A provides:

§ 2880.1 **Right to Appeal—Notice of Appeal—Duty of District Attorney—Presumption.**

A. Both the taxpayer and the county assessor shall have the right of appeal from any order of the county board of equalization to the district court of the same county, and right of appeal of either may be either upon questions of law or fact including value, or upon both questions of law and fact. In case of appeal *the trial in the district court shall be de novo ...*

---

1. The appeal to district court was from a decision of the Cleveland County board of equalization, which had lowered the assessment made by the Cleveland County assessor to 5% of the actual value replacement cost new. The trial judge's order upheld the valuation made by the county assessor but did not refer to the assessment made by the board of equalization.

2. The assessor testified that the board of equalization valued the property at $296,489.00, also using the Visual Lease Services schedule.

¶ 8 The statute provides that the trial de novo will include both issues of fact and law if sought by the appealing parties. Where a statute provides for trial de novo in district court, the trial court must conduct a new trial of both legal and factual issues, without regard to the prior decision of the tribunal. *Hagen v. Indep. School Dist. No. I–004 of Adair Co.*, 2007 OK 19, 157 P.3d 738, 739; *Jackson v. Board of Equalization of Pushmataha Co.*, 1995 OK CIV APP 35, 892 P.2d 673.[3] The trial judge is to determine the value of the taxpayer's property and, if necessary, order the county assessor to recalculate, correct the tax rolls and refund the excess taxes. *See, Oklahoma City Golf & Country Club v. Keyes*, 1992 OK 94, 836 P.2d 1282. In *George L. Verity v. Keyes*, 1992 OK 93, 836 P.2d 1279, we determined that where no facts or evidence on value were presented to the district court, the taxpayer was entitled to remand for trial de novo because the taxpayer was entitled to same by statute.

¶ 9 Under the statute the trial judge was to make a de novo valuation based upon its own factual determination of the fair cash value of Cimmarron's pipeline, estimated at the price it would bring at a fair voluntary sale. 68 O.S. § 2875(D)(1). The trial judge in the case at bar failed to do so. The trial judge instead gave presumptive effect to the correctness of the assessor's method of valuation. The trial judge believed that he was without jurisdiction to change the amount of fair cash value as long as the method used was correct. That is, the trial judge believed that the only issue before him was whether the method of valuation used by the assessor was not lawful. The trial judge's order stated:

"As a trial court sitting in review of an administrative agency action, the standard of review is de novo, *which is review of questions of pure law.*" (emphasis added) The trial court determined that he could review only questions of law because he believed that findings of fact by the agency in an administrative agency action are considered to be settled. Because the valuation of assets is a question of fact, the trial judge stated that he could not decide valuation on de novo appellate review of an agency's action. The trial court thus erroneously believed that the only question for him to decide was whether the valuation *method* employed by the assessor was legal.[4] The trial judge specifically did not rule on whether the sales were or were not arm's-length transactions, stating in his order: ". . . I find none of this to be relevant if the method used by the assessor and equalization board was lawful. I find they were . . ."

¶ 10 On appeal, the Court of Civil Appeals correctly interpreted the standard of review for the trial court to be de novo, without deference to either the factual or legal determinations made by the Board of Equalization, and recognized that when the trial court fails to make de novo review, the cause must be remanded to the trial court. Nevertheless, the Court of Civil Appeals did not remand to the trial court, but instead made its own valuation based upon a previous opinion by the Court of Civil Appeals involving some of the same pipeline purchased by Cimmarron in a different county. The appellees petitioned for writ of certiorari and we granted the petition.

¶ 11 The case must be remanded to the trial court for de novo determination of the fair cash value of the property. As to the valuation method to be used, in *Bliss Hotel v. Thompson*, 1962 OK 234, 378 P.2d

---

3. In *Jackson v. Board of Equalization of Pushmataha Co.*, 1995 OK CIV APP 35, 892 P.2d 673, the trial court, in an appeal pursuant to 68 O.S. § . 2880.1 believed itself bound by the decision of the board of equalization and so recited in the journal entry of judgement. The Court of Civil Appeals found that the trial judge's misapplication of the standard of review required that the trial judge be reversed and the cause remanded for de novo determination of taxpayer's protest of the ad valorem valuation of his property. *See also, Matthews v. Funck*, 2007 OK CIV APP 15,

155 P.3d 852; *In re Certain Assessments for 2003*, 2006 OK CIV APP 147, 150 P.3d 399.

4. The trial judge's order stated: "In review, this court will only determine if the valuation method employed by the assessor was legal." He went on to conclude that Cimmarron had not presented evidence to challenge the *legality* of the valuation method, but rather that Cimmarron merely disagreed with the valuation.

319, this Court stated that the actual bona fide, arm's-length sale price of the hotel in question, absent any special depressing circumstances, was close enough in point of time and was, under the facts and circumstances of the case, competent and substantial evidence of the value and, under the record presented, was controlling. 378 P.2d at 322. We concluded that the fair market value was established by the sale of the hotel and that other evidence tending to show what market value might be, which might be resorted to *in the absence of such a sale*, may not be used to overthrow the evidence of the market itself. We said that a trial court acts contrary to the clear weight of the evidence when it disregards evidence of the actual bona fide, arm's-length sale price, absent any depressing circumstances. *Bliss Hotel v. Thompson*, 1962 OK 234, 378 P.2d 319, 322. "Depressing circumstances" refers to evidence that indicates that the sales were other than arm's length and not indicative of true market value. *See, County Board of Equalization v. Frontier Grain, Co.*, 1969 OK 82, 454 P.2d 317. *Bliss Hotel's* fair market value definition has been modified only when applied to assessment of real property, to take into account Constitutional amendment based on use of the property. *See, Liddell v. Heavner*, 2008 OK 6, 180 P.3d 1191, and *Tulsa Co. Bd. Of Equalization v. Indep. Sch. Dist. No. 1 of Tulsa Co.*, 1987 OK 83, 743 P.2d 1076. Here, personal property is being assessed, and the amendment to Art. 10 § 8 Oklahoma Constitution based on use of real property does not apply. *See, Liddell*, 2008 OK 6 ¶ 11, 180 P.3d 1191.

¶ 12 At the trial de novo, Cimmarron contended that what Cimmarron actually paid for the pipeline is the best reflection of its fair cash value or fair market value. Cimmarron argued that this value was based on and substantiated by nine comparative sales, listed in plaintiff's Exhibit 2, about which plaintiff's witnesses had testified. The assessor argued that the best approach to value the idle pipeline is the cost approach, and offered supporting testimony from Visual Lease Services and from a representative from the Oklahoma Tax Commission. The assessor contended that the sales by which Cimmarron purchased the pipeline were not

arm's-length transactions. The assessor contended that the comparable sales should not be used because the oil and gas industry is very "tight-lipped" and that, because of this, the "market is not there to use a comparable sales approach." The assessor asserts that the comparable sales presented by Cimmarron were "cherry-picked" by Cimmarron.

¶ 13 In *County Board of Equalization v. Frontier Grain Co.*, 1969 OK 82, 454 P.2d 317, where there was no evidence of sales of comparable properties, we affirmed the trial court's decision that the sale of the property itself, resulting from an arm's-length transaction, was proper where there was no change in the value of the property between the assessed date and the date of the sale contract. We said that pursuant to the language of Article 10 § 8, Oklahoma Constitution, a sale under the *Bliss Hotel* circumstances was competent and substantial evidence of the property's value for tax assessment under the constitutional provisions. We held that the actual bona fide and arm's-length sale of the property was, under the facts and circumstances in the case, competent and substantial evidence of the fair cash value of the property. 454 P.2d at 319–320. More recently, in *State ex rel. Oklahoma Tax Commission v. Texaco Exploration and Production, Inc.*, 2005 OK 52, 131 P.3d 705, 712, we held that *in the absence of an actual arm's length sale at the wellhead*, the gross value of gas for calculation of gross production taxes is to be determined by using the prevailing price method or the work-back method adopted in *Howell v. Texaco*, 2004 OK 92, 112 P.3d 1154, whichever results in the higher value. There, we found that Texaco's purported contract to purchase its own gas at the wellhead could not form the basis to establish value of gas for calculating gross production taxes.

¶ 14 Thus, pursuant to *Bliss Hotel* and subsequent cases, evidence of bona fide, arm's-length sales should not be disregarded by the trial court unless there are any depressing circumstances; i.e., evidence that indicates that the sales were other than arm's-length and were not indicative of true market value. These are factual questions to be determined by the trial court sitting as

the trier of fact. The trial judge in the case at bar stated merely that some of the evidence "called into question" whether the transactions were arm's-length, and went on to state that whether the transaction was arm's-length was irrelevant if the method used by the assessor and the board of equalization was lawful. This was error because the duty of the trial court, sitting as finder of fact in the trial de novo, was to determine the fair cash value of the property. *See, Appeal of Billings Community Elevator, Inc.* 1972 OK 113, 510 P.2d 953, 956. For the above and forgoing reasons, the trial court's order must be reversed and the cause remanded to the trial court.

**CERTIORARI HAVING BEEN GRANTED PREVIOUSLY; THE DECISION OF THE COURT OF CIVIL APPEALS IS VACATED AND THE DECISION OF THE TRIAL COURT IS REVERSED AND REMANDED FOR A DETERMINATION OF FAIR CASH VALUE OF THE PROPERTY.**

¶ 15 WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR, COLBERT, JJ., CONCUR.

¶ 16 REIF, J., RECUSED.