2013 OK CIV APP 2

**THORNTON FAMILY, L.L.C.,**
**Plaintiff/Appellee,**

v.

**Ken YAZEL, Tulsa County Assessor,**
**Defendant/Appellant.**

**No. 109,627.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

July 26, 2012.

Rehearing Denied Oct. 3, 2012.

Certiorari Denied Dec. 10, 2012.

Thomas M. Askew, Sharon K. Weaver, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Inc., Tulsa, Oklahoma, for Plaintiff/Appellee.

Leisa S. Weintraub, Tulsa, Oklahoma, for Defendant/Appellant.

BAY MITCHELL, Judge.

¶ 1 Defendant, Ken Yazel, Tulsa County Assessor (Assessor), seeks review of the trial court's order sustaining Plaintiff Thornton Family, L.L.C.'s Motion for Summary Judgment, and denying Assessor's Motion for Summary Judgment.

¶ 2 In this appeal, Assessor asserts the trial court erred in determining that the fair cash value of Plaintiff's real property as fixed by Assessor for the tax year 2010 exceeded the actual fair cash value of the property. Specifically, Assessor sought to include a building still under construction in valuing the property. Having reviewed the record, this Court holds the trial court did not err in determining the fair cash value of Plaintiff's property as fixed by Assessor for the tax year 2010 exceeded the actual fair cash value of the property. The order of the trial court is affirmed.

¶ 3 In April 2003, Plaintiff purchased real property (the property) having on it a warehouse and other structures. With the exception of the warehouse, Plaintiff removed the existing structures from the property. In June 2008, Plaintiff began construction on the property of the service and sales building for its car dealership. On January 1, 2009, for the 2009 tax year, Assessor determined the fair cash value of the property was $3,084,145.[1]

¶ 4 On January 12, 2010, Assessor mailed Plaintiff a Notice of Change in Assessed Value for the 2010 tax year wherein it determined the fair cash value of the property was $14,233,487.[2] Plaintiff filed an informal protest and Assessor reduced the fair cash value of the property to $8,268,588. Plaintiff then filed a formal protest with the County Board of Equalization, contesting the assessment of fair cash value by Assessor. The Board of Equalization sustained Assessor's determination of fair cash value of the property, as adjusted.

¶ 5 Plaintiff appealed the Board's decision to the Tulsa County District Court.[3] Both Plaintiff and Assessor filed motions for summary judgment and together filed a Stipulation of Facts.[4] There are no disputed issues of material fact.

¶ 6 The trial court granted summary judgment to Plaintiff. In its Journal Entry of Judgment, the court determined the property's fair cash value as of January 1, 2010 to be $2,718,400 for the land and $399,879 for the existing warehouse, for a total of $3,118,279. The court attributed no value to the sales and service building which was still under construction on January 1, 2010,[5] citing the Ad Valorem Tax Code, 68 O.S. § 2801 et seq., and an Oklahoma Attorney General's opinion, 2007 OK AG 34.

¶ 7 Assessor contends the building under construction at the time of the January 1, 2010 assessment should have been valued in determining the fair cash value of the property for ad valorem purposes. Thus, the legal issue here is whether the under-construction sales and service building was sub-

---

1. It is unclear from the record whether the under-construction service and sales building was included in the 2009 assessment.

2. January 1, 2010, was the assessment date for the 2010 tax year for ad valorem tax.

3. Title 68 O.S. § 2880.1 authorizes appeal from the county board of equalization to the district court for a trial de novo.

4. The Stipulation of Facts provides, in part:
   3. [Plaintiff] purchased the Property with the intent to construct a new sales and service building for its dealership....
   ....

16. As of the Assessment Date [January 1, 2010], Assessor established the fair cash value of Building 1 [the warehouse] at $399,879. and Building 2 [the auto sales and service building under construction] at $5,510,309.
17. On the Assessment Date, the cost of construction of Building 2, including materials and labor, was $11,673,114.
   ....
19. On the Assessment Date, the fair market value of the Property's land was $2,718,444.

5. On March 10, 2010, Plaintiff completed construction on the service and sales building.

ject to ad valorem taxation, and if so, what is the proper method to be used for its valuation. Our review of this legal issue is *de novo*.

¶8 In the Attorney General's opinion, the question submitted was "Does 68 O.S. Supp. 2006 § 2817(I),[6] which established ad valorem valuation procedures for assessment of lots and buildings under construction, establish that before construction of a building has been completed, the value of the property is assessed to be only the value of the lot on which the building will be constructed, rather than the value of the materials used in the building under construction added to the value of the lot?"

■ ¶9 Section 2817(I), being construed by the Attorney General, did not specifically address whether or how to account for the value of a building under construction during the year(s) it is under construction. The Attorney General concluded that based on § 2817(I), "for assessment of lots and buildings under construction" the ad valorem val-

uation is to be only the value of the land on which the building is being constructed, rather than the value of the materials used in the building under construction added to the value of the land.[7]

¶10 In 2008, § 2817(I) was amended in ways unrelated to the present issue, and the subsections were recodified. The operative language previously found in the first half of § 2817(I) is now found in § 2817(J), which provides:

> If any real property shall become taxable after January 1 of any year, the county assessor shall assess the same and place it upon the tax rolls for the next ensuing year. When any building is constructed upon land after January 1 of any year, the value of the building shall be added by the county assessor to the assessed valuation of the land upon which the building is constructed at the fair cash value thereof for the next ensuing year. However, after the building has been completed it shall be deemed to have a value for assessment purposes of the fair cash value of the mate-

**6.** Title 68 O.S. Supp.2006 § 2817(I) provided:

"If any real property shall become taxable after January 1 of any year, the county assessor shall assess the same and place it upon the tax rolls for the next ensuing years. When any building is constructed upon land after January 1 of any year, the value of the building shall be added by the county assessor to the assessed valuation of the land upon which the building is constructed at the fair cash value thereof for the next ensuing year. However, after the building has been completed it shall be deemed to have a value for assessment purposes of the fair cash value of the materials used in such building only, until the building and the land on which the building is located shall have been conveyed to a bona fide purchaser or shall have been occupied or used for any purpose other than as a sales office by the owner thereof, or shall have been leased, whichever event shall first occur. The county assessor shall continue to assess the building based upon the fair market value of the materials used therein until the building and land upon which the building is located shall have been conveyed to a bona fide purchaser or is occupied or used for any purpose other than as a sales office by the owner thereof, or is leased, which ever event shall first occur. However, the fair cash value of a lot in any platted addition or a subdivision in a city, town or county zoned for residential, commercial, industrial or other use shall be deemed to be the total purchase price paid by the developer of

the addition or subdivision for the land comprising the platted addition or subdivision divided by the number of lots contained in the addition or subdivision until the lot with building or buildings located thereon shall have been conveyed to a bona fide purchaser or shall have been occupied other than as a sales office by the owner thereof, or shall have been leased, whichever event shall first occur. One who purchases a lot for the purposes of constructing and selling a building on such lot shall not be deemed to be a bona fide purchaser for purposes of this section. However, if the lot is held for a period longer than two (2) years before construction, then the assessor may consider the lot to have been conveyed to a bona fide purchaser. The cost of any land or improvements to any real property required to be dedicated to public use, including, but not limited to, streets, curbs, gutters, sidewalks, storm or sanitary sewers, utilities, detention or retention ponds easements, parks or reserves shall not be utilized by the county assessor in the valuation of any real property for assessment purposes.

The fifth sentence through the end of this section dealing with lots in a platted addition or subdivision was revised in 2008 and is now found in § 2817(F).

**7.** Although an Attorney General's opinion is persuasive, this Court is not bound by the opinion of the Attorney General. *Austin, Nichols & Co. v. Okl. Cty. Bd., Etc.*, 1978 OK 65, 578 P.2d 1200.

rials used in such building only, until the building and the land on which the building is located shall have been conveyed to a bona fide purchaser or shall have been occupied or used for any purpose other than as a sales office by the owner thereof, or shall have been leased, whichever event shall first occur. The county assessor shall continue to assess the building based upon the fair market value of the materials used therein until the building and land upon which the building is located shall have been conveyed to a bona fide purchaser or is occupied or used for any purpose other than as a sales office by the owner thereof, or is leased, whichever event shall first occur.

This language is identical to the first half of 68 O.S. Supp.2006 § 2817(I) quoted in footnote 6.

¶ 11 Assessor contends the Attorney General's opinion was too factually dissimilar to be persuasive because it concerned a building under construction on a lot in a platted area, while the building under construction here is on land not platted, but rather previously owned, occupied, and improved with buildings before Plaintiff bought the land.

¶ 12 The Attorney General's opinion did address a question concerning buildings under construction *on lots.* The issue it addressed, however, was the same issue as is before us now—whether buildings under construction are subject to ad valorem taxation. Whether or not the building under construction is on a lot in a platted addition makes no difference in answering the underlying question of whether such unfinished buildings are subject to ad valorem taxation in the first place. The taxation *formula* for lots in a platted addition or subdivision is different than for unplatted land, but the law treats unfinished buildings the same, whether in a platted area or not. The analysis in the A.G.'s opinion regarding ad valorem taxation of buildings under construction on a lot concerned the same statutory language we are interpreting here—§ 2817(J) (formerly part of § 2817(I)) quoted above in paragraph 10.

¶ 13 Assessor concedes the statute requires that a building, after it is constructed, is to be valued at the fair cash value of the materials used in the building and added to the value of the land for the next tax year until the land and building are sold or occupied and used. Assessor does not explain, nor does the Ad Valorem Tax Code, how an uncompleted building should be valued. Assessor points out the general rule that "All property in this state, whether real or personal, except that which is specifically exempt by law ... shall be subject to ad valorem taxation." 68 O.S.2011 § 2804. Taxable real property is then defined in 68 O.S.2011 § 2806(A) which provides in pertinent part:

> Real property, for the purpose of ad valorem taxation, shall be construed to mean the land itself, ... and all buildings, structures and improvements or other fixtures, ...

Uncompleted buildings are simply not addressed in this definition of taxable real property. More problematic is that there is no formula in the statutes to value buildings that are in various stages of construction. While the "value of materials used in construction" could theoretically be applied to an uncompleted building, § 2817(J) quoted in paragraph 10 above, limits application of the "value of materials" formula to buildings that have been completed but are unsold or unoccupied.

¶ 14 As reasoned in the Attorney General's opinion:

> A plain reading of ... ["... after the building has been completed ...."] shows that until the building is completed, a separate value for the building is not added to the value of the land. Before construction of a building is completed, the value of the property is assessed at only the value of the lot on which the building would be constructed, rather than the value of the materials used in the building under construction added to the value of the lot.

We do not agree with the Attorney General's opinion that the statute clearly addresses whether, or how, to value uncompleted buildings. Accordingly, we must look to the rules of statutory construction.

¶ 15 The fundamental purpose of statutory construction is to determine and give effect to legislative intent. *Humphries v. Lewis,*

2003 OK 12, ¶ 7, 67 P.3d 333, 335.[8] The Court presumes that the Legislature expressed its intent and that it intended what it expressed. *King v. King*, 2005 OK 4, ¶ 22, 107 P.3d 570, 579. "[W]here a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent." *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15, 20. To the extent the statute we are construing here is unclear or ambiguous we are guided in determining legislative intent by the maxim *"expressio unius est exclusio alterius,"* that the mention of one thing in a statute impliedly excludes another thing. *PSO v. State ex rel. Corporation Commission*, 1992 OK 153, ¶ 16, 842 P.2d 750, 753; *R.R. Tway v. Okla. Tax Comm.*, 1995 OK 129, ¶ 17, 910 P.2d 972.

¶ 16 In § 2817(J), the Legislature provided specifically for the ad valorem tax assessment of buildings once they are completed, by valuing them at the "fair cash value of the materials used in such building[s] only" until the buildings are sold to a bona fide purchaser, or become occupied and used, or leased. By this treatment of "constructed buildings" and its failure to address uncompleted buildings, the Legislature impliedly excluded uncompleted buildings from ad valorem taxation. We will not assume the Legislature intended to include buildings under construction as "real property" for purposes of ad valorem taxation, nor will we speculate on what formula or method of valuation would be used if such under-construction buildings were subject to ad valorem taxation.

¶ 17 For the reasons articulated herein, summary judgment was properly granted to Plaintiff. That judgment is AFFIRMED.

BELL, P.J., and HETHERINGTON, J., concur.

---

8. Statutory construction presents a question of law that we review *de novo. Humphries v. Lewis,* 2003 OK 12, ¶ 3, 67 P.3d 333, 335.